LUCIUS GLYNN *vs.* CARRIE S. GLYNN.

Opinion filed December 8, 1898.

**Divorce—Support of Child.**

A decree of divorce was granted on the husband's application. The decree directed that the plaintiff should "provide, care for, maintain, and educate" a minor son of plaintiff and defendant, but did, not change the custody of the child from where the law placed it, or direct that any special sum be applied to the purposes named. *Held,* that the decree did not change the statutory duties or rights of plaintiff touching such son.

**Payments to Divorced Wife—Contempt.**

Under our statute, when a divorce is granted to the husband for the fault of the wife the Court has no power to make any allowance by way of support or maintenance for the wife; and when, in such a case, the plaintiff agreed that he would pay the defendant a certain sum per month, and that an order to that effect might be entered in the decree, and the same was accordingly done, the amount so ordered to be paid was not alimony, but arose from express contract, and payment could not be enforced by an attachment for contempt.

Appeal from District Court, Cass County; *Pollock,* J.

Action by Lucius Glynn against Carrie S. Glynn for divorce. Judgment for plaintiff. Motion to attach plaintiff for contempt in failing to pay alimony. From an order directing plaintiff to be committed until alimony was paid, he appeals.

Reversed.

*Newman, Spalding & Stambough,* for appellant.

This divorce was not granted for an offense of the husband, but for an offense of the wife, therefore the order of the Court cannot be sustained. § 2761, 2762, Rev. Codes; Bishop on Marriage and Divorce, § 564; *Palmer* v. *Palmer,* 1 Paige Ch. 277; *Perry* v. *Perry,* 2 Barb. Ch. 311; *Everett* v. *Everett,* 52 Cal. 383. The judgment could be enforced by execution. §§ 5500, 5501; Rev. Codes; Anonymous 12 Abb. N. C. 160; *Barber* v. *Barber,* 21 How. U. S. 582. But it cannot be enforced by a contempt proceeding. *Lansing* v. *Lansing,* 4 Lans 377; *Miller* v. *Miller,* 7 Hun, 208; *Gray* v. *Cook,* 24 How. Pr. 432.

*Young & Burke,* for respondent.

In divorce cases the Court will as a rule adopt an agreement entered into by the parties if just and equitable. *Daggett* v. *Page,* 28 Am. Dec. 442; *Petersine* v. *Thomas,* 28 Ohio St. 596; *Calame* v. *Calame,* 24 N. J. 440; 2 Am. & Eng. Enc. L. (2nd Ed.) 127. The Court having adopted the agreement of the parties they are concluded thereby. *Buck* v. *Buck,* 60 Ill. 242; *Storey* v. *Storey,* 125 Ill. 608; 8 Am. St. Rep. 417. So long as such a judgment remains unreversed the defendant is bound even though the judgment is erroneous. *State* v. *Jamison,* 72 N. W. Rep. 452. The wife

has been allowed alimony upon a divorce at the husband's complaint. Ex parte Perkins, 18 Cal. 60; *Pollock* v. *Pollock,* 9 S. D. 48, 68 N. W. Rep. 176; *Gaines* v. *Gaines,* 19 S. W. Rep. 292. The most common method of enforcing orders or decrees for alimony is by attachment for contempt. *Park* v. *Park,* 80 N. Y. 156; *Staples* v. *Staples,* 58 N. W. Rep. 1036; *Galland* v. *Galland,* 44 Cal. 475; *Potts* v. *Potts,* 36 N. W. Rep. 240; 1 Enc. Pl. & Pr. 437; Ex parte Hart, 94 Cal. 254; Ex parte Gordon, 95 Cal. 374.

BARTHOLOMEW, C. J. In 1895 the plaintiff brought an action in the District Court of Cass county to obtain a decree of divorce from the bonds of matrimony then and theretofore existing between plaintiff and defendant. The cause of action, as set forth in the complaint, was cruel and inhuman treatment. The defendant appeared and answered, denying all cruel and inhuman treatment on her part. On September 7, 1895, the parties, by their attorneys, entered into a stipulation as follows: "The plaintiff and defendant in the above-entitled action hereby waive findings of fact and conclusions of law upon the trial therein; and it is further stipulated that it may be ordered and decreed in said cause that the said plaintiff shall pay to the said defendant on the 1st day of each and every month, commencing with the month of November, 1895, the sum of thirty dollars ($30), during the remainer of said defendant's life, or so long as said defendant shall remain unmarried, and, further, that the said plaintiff shall care for, maintain, support, and educate the said minor child, C. Edward Glynn, issue of said marriage. And it is further stipulated that said action may be tried on the 7th day of September, 1895, and decree ordered therein on that date." On the same day the Court made an order for judgment and decree in the following language: "This cause coming on to be heard on the 7th day of September, 1895, the respective parties having stipulated that the same shall be heard upon that date, upon the complaint of the plaintiff, and the answer of the defendant, and the evidence of the plaintiff and his witnesses, adduced on the part of the plaintiff, plaintiff being represented by Newman, Spalding & Phelps, his attorneys, and present in person, and defendant being represented by Fred B. Morrill, Esq., her duly-authorized attorney, and said defendant having made a general appearance in said action by said Fred B. Morrill, and the Court thereby having acquired jurisdiction of the subject-matter in controversy and of the defendant, and the Court having duly considered the evidence adduced, and having found all the allegations in said complaint sustained by competent evidence, and the respective parties having waived findings of fact and conclusions of law, and the respective parties having stipulated that an order be entered in said cause directing that the plaintiff pay to the defendant the sum of thirty dollars ($30) on the 1st day of each and every month, commencing with the month of November, 1895, during the remainder of her life, or so long as she shall remain unmarried, and, further, that the said plaintiff shall provide for the proper maintenance and

education of the said minor child, C. Edward Glynn, the Court finds that said plaintiff is entitled to a judgment for divorce herein from the defendant herein, dissolving the said bonds of matrimony between himself and said defendant, and releasing the parties thereto, and each of them, from said bonds, and from all obligations thereof. Now, on motion of Newman, Spalding & Phelps, attorneys for said plaintiff, it is ordered that judgment be entered accordingly." On September 24, 1895, a judgment was entered in pursuance of the order, which, after the recitals, reads: "It is ordered and adjudged that the said plaintiff herein be, and he is hereby, divorced from the defendant, and the bonds of matrimony between plaintiff and defendant are hereby dissolved, and they, and each of them, are released and freed therefrom and from all obligations thereof; and the said plaintiff is directed to pay the said defendant the sum of thirty dollars ($30) on the 1st day of each and every month, commencing with the month of October, 1895, during the remainder of her life, or so long as she shall remain unmarried, and, further, that said plaintiff shall provide, care for, maintain, and educate the said minor child, C. Edward Glynn." On December 13, 1897, the District Court of Cass county issued an order on plaintiff to show cause why he should not be attached, as for contempt of court, for failing to pay alimony to defendant as directed by the order of September 24, 1895. On the return day of the order, plaintiff appeared specially, and moved to dismiss the proceedings upon the following ground: "Because the judgment in said action was in favor of the plaintiff therein, and the Court has no power to enforce a judgment for permanent alimony in favor of the defendant (the defendant not being the innocent party, as shown by said judgment) by attachment, or by any other method or proceeding other than by execution." The motion to dismiss was denied, and the matter involved in the order to show cause was submitted on its merits, each party filing affidavits. The Court entered an order declaring plaintiff guilty of a contempt of court, in failing to comply with the order requiring the payment of money, and in failing to support and educate the minor son. The Court found the sum of $580 to be in arrears, and directed that plaintiff be committed to the jail of Cass county until said sum was paid, or he was otherwise discharged according to law. From this order plaintiff brings this appeal.

We do not understand that any imprisonment was ordered by reason of plaintiff's failure to maintain, fare for, and educate his minor son, although the Court adjudges him in contempt upon that ground, also. Even in this the Court was clearly wrong. First, it does not appear that plaintiff has not fully provided for his son. The lad was 19 years old when these contempt proceedings were instituted. He had been attending an academy in Vermont. The father wrote him that he would pay his expenses, if he could, and there is nothing to show that he has not done so. True, he has not sent the money to the son, but that was not necessary. But,

further, the divorce decree did not give the defendant the custody of the son. It is not mentioned in the decree. The father is directed to "provide, care for, maintain, and educate" the son. But that duty rested upon him before. It was no stronger after it was recited in the decree, nor was the character of the duty changed. The father might still provide for and educate his son in such manner and at such place as he saw proper, provided it reasonably comported with his ability. It is undisputed in this case that the father requested the son to join him at his home, in Valley City, in this state, and offered to place him in the normal school at that place, and properly care for him. To this the defendant, or the son, or both, refused to assent. The father is not required to support the son in idleness in Vermont. The only reason that we can assign for the presence of that provision in the stipulation between the parties and in the decree is the fact that both parents were in law bound to support their minor son. The mother desired, as between themselves, to throw the entire charge upon the father, and he was willing to accept it, and so contracted. If now the mother should be required to contribute from her own means for the support or education of the son, she could undoubtedly recover the amount contributed by her from the father, by reason of his contract. If the decree had given the defendant the custody of the minor child, and directed that the father pay her a specified sum for the support and education of the child, the question would be altogether different.

Appellant contends that the amount specified in the decree to be paid by plaintiff to defendant is in no sense of the word alimony; that it is, in effect, a money judgment on contract, possessing no greater sacredness, and enforceable in no other manner, than an ordinary money judgment upon contract. After a very careful consideration of the subject, we reach the conclusion that this contention must be sustained. But, before stating the reasons which lead us to this conclusion, we note that counsel for respondent, and the Court below, seem to have fallen into the error of regarding the appellant as seeking to evade the terms of the judgment, and practically demanding a modification thereof. The case of State v. Jamison (Minn.) 72 N. W. Rep. 451, is cited in support of the ruling below. In that case a decree of divorce had been granted in favor of the wife for the fault of the husband, and the decree provided that the husband should pay the wife a certain monthly sum as alimony. He failed to pay, and was imprisoned on contempt proceedings. On review of those proceedings he contended that the judgment against him was void, because the judgment on its face showed that the defendant had no estate, real or personal, but that his ability to pay arose from the fact that he was receiving a salary; while the Supreme Court of that state had held that alimony could not exceed one-third of the estate, real and personal, of the defendant. The Court said that was simply an error, and did not render the judgment void, and the fact that the error appeared in the judgment

roll did not alter the rule; until the judgment was reversed or modified, the defendant must obey it. That was clearly right, but it does not affect this case. This appellant is not seeking to avoid the decree. He is entirely satisfied with it, but he objects to the interpretation placed upon it by the trial court. The provisions of our statute immediately applicable to the case before us are sections 2761, 2762, Rev. Codes. The first section reads: "When a divorce is granted for an offense of the husband the Court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life or for a shorter period as the Court may deem just, having regard to the circumstances of the parties respectively; and the Court may from time to time modify its orders in these respects." The next section contains the following: "The Court may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter and may enforce the same by the appointment of a receiver or by any other remedy applicable to the case." It will be noticed that this statute authorizes the granting of maintenance to the wife only in cases where the divorce is granted for the fault of the husband. In this respect our statute differs from that of several of the states, where the granting of alimony is left to the judgment of the Court, without reference to the party in fault. Such is the statute of New Hampshire. *Sheafe* v. *Laighton,* 36 N. H. 240. Also in Illinois. *Spitler* v. *Spitler,* 108 Ill. 120. And in Pennsylvania. *Miles* v. *Miles,* 76 Pa. St. 357. And in Iowa. *Zuver* v. *Zuver,* 36 Iowa, 190. And in Massachusetts. *Graves* v. *Graves,* 108 Mass. 314. And in Indiana. *Coon* v. *Coon,* 26 Ind. 189. And in Kentucky. *Gaines* v. *Gaines,* 9 B. Mon. 303. We call attention to this fact because respondent seeks to sustain the action of the trial court by citations from states where this different rule obtains. In the absence of statute, the rule is inexorable that no alimony can be allowed where a divorce is granted for the fault of the wife. *Palmer* v. *Palmer,* 1 Paige, 276; *Waring* v. *Waring,* 100 N. Y. 570, 3 N. E. Rep. 289; *Everett* v. *Everett,* 52 Cal. 383; *McIntire* v. *McIntire,* 80 Mo. 470; *Harris* v. *Harris,* 31 Grat. 13. That the dictates of mercy and Christian charity might sometimes require an exception to this stern rule of the common law is no doubt true. Its rigid enforcement might sometimes cast a woman, weak rather than wicked, penniless and unprotected upon the charities of the world. This consideration it was that brought into existence the statute of which we have spoken. It has gone further. It has called forth protests from chancellors. *Perry* v. *Perry,* 2 Barb. Ch. 311; *Prichard* v. *Prichard,* 3 Swab. & T. 523. In this latter case the English chancellor adopted the somewhat questionable course of arbitrarily refusing a divorce until the husband voluntarily made provision for the wife, saying that, "if there were no precedent, he would establish one." But these protests only serve to demonstrate the inflexibility of the rule. And even in those states where the

common-law rule has been changed the courts are exceedingly cautious in giving the wife alimony in cases where she is the guilty party. This is well illustrated by the case of *Spitler* v. *Spitler*, supra. There the divorce had been granted to the husband, and the wife had been allowed alimony. The Supreme Court of Illinois reversed as to the alimony, and said: "It was manifestly not the object of the legislature in adopting the provisions of the statute above cited to abrogate the general priciples or policy of the law relating to the subject of alimony, but rather to clothe the courts with power to mitigate occasional hardships that would otherwise occur on account of the inflexible rule that the wife is not entitled to alimony where the divorce is granted to the husband on account of her own misconduct." And again: "To the suggestion, appellee for many years faithfully discharged her duties as a wife, and thereby materially aided appellant in accumulating his present property, and should therefore have a part allowed to her, it is a sufficient answer, under the circumstances of this case, to say that by the law as it existed at the time of their marriage, and as it continued to be many years thereafter, her time, services, and accumulations after such marriage became absolutely his. As a compensation for this, the same law compelled him to furnish her with a home, and provide for all her reasonable wants, according to his means and station in life; and, if he neglected to do this, others were authorized to supply such wants, and compel him to pay the bills. * * * So far as this record shows, the appellant faithfully discharged the obligations he assumed, and, if she is not now enjoying all the law secured to her, it is her own fault and folly, not her husband's; and she must submit to the consequences thus voluntarily brought upon herself, however grievous they may be."

A court of equity has no more worthy duty to perform than to force a derelict husband and father to support his wife and children. That burden both the common and statute law place upon him, and it is in the interests of a sound public policy, in the interests of morality, in the interests of the preservation of the family relation, which is the basis of all good government, that he should not be permitted to evade or disregard this burden. It is a sacred duty that is cast upon him, and in a proper case the Court should exercise all the powers permitted to it to enforce such duty. Nor can the husband, once the burden has been assumed, by any act of his own disencumber himself. At the same time, if he be faithless to his marital duties and obligations, the law will not compel the injured wife to live with him. She may rid herself of the incubus of his companionship, and yet retain the right to support, and this because he is the party who has broken the marriage contract. On the other hand, if the wife be guilty of that conduct which the law says forfeits her rights and privileges as a wife, when, in a proper case, this judgment of the law is pronounced by the court, she loses all her rights as a wife, including her right to support. The law lifts that burden from the husband. No responsibility in that di-

rection longer rests upon him, unless he voluntarily assume it. But this misconduct of the wife in no manner affects the husband's duty to support the minor children, the issue of such marriage; and undoubtedly a court may, even when the wife is in fault, give her the custody of the children, particularly if they be of tender years, and in such a case the court may direct that the father pay to the mother a sum certain for the support of such children. Such were the facts in the case of *Pollock* v. *Pollock* (S. D.) 68 N. W. Rep. 176, so much relied upon by counsel. The case has no priciple in common with the case at bar.

Since, then, neither at common law nor under our statute was the respondent entitled, as a matter of law, to any support from the appellant, we are not to presume that the Court made the allowance by virtue of his power, under the law and the facts, to grant a divorce; if the record presents any other sufficient reason for that provision in the decree. When we turn to the order for the decree, we find that the Court studiously avoided placing the provision upon any legal right in respondent. The action was based upon the misconduct of the wife, which was set forth in detail in the complaint, confessedly sufficient to bring it within the statute. This misconduct the wife denied. But the Court recites that all the allegations of the complaint were sustained by the evidence, thus forever foreclosing respondent's right to any allowance under the facts. The Court immediately adds, in effect, that inasmuch as plaintiff had by stipulation in writing agreed to pay to defendant the sum of $30 per month, and had agreed that such provision might be made in the decree it was so ordered. In other words, the effect of the order was to declare that the law had relieved the plaintiff of all duty to support the defendant, but he had agreed to pay her a certain sum and therefore the Court would decree such payment. But what was that more than an order on contract? The parties were thenceforth strangers, as absolutely as though they never had met. Every right and obligation under or by virtue of the marriage relation had been swept away. The right to the allowance rested on the naked contract. If it be claimed that the appellant was forced into this stipulation in order to obtain his divorce, then the agreement, being entirely unexecuted, and being in furtherance of the divorce, is void. *Speck* v. *Dausman,* 7 Mo. App. 165; Seeley's Appeal, 56 Conn. 202, 14 Atl. Rep. 291; *Jordon* v. *Westerman,* 62 Mich. 170, 28 N. W. 826. We are unable to see how that can aid respondent. It may be too late now for appellant to avoid the contract. But, be that as it may, if the contract be void it does not change respondent's legal rights. It does not entitle her to that to which the record shows she was not entitled in the absence of the contract. View it as we may, if she have any rights here, they must rest for their basis upon that contract. Embodying that contract in the decree could not change its essential nature.

It cannot be claimed that this appellant can be imprisoned for debt in this case. Section 15, State Const., limits such imprisonment to

cases where a party refuses to turn over his estate for the benefit of creditors as prescribed by law, or cases of tort, or where there is a strong presumption of fraud. This case does not come within the permission. Treating the proceeding purely as in civil contempt,—and such it no doubt is,—it must come under some one of the subdivisions of section 5934, Rev. Codes, authorizing punishment for civil contempts. Respondent claims that it comes within subdivision 8, which permits such punishment "in any * * * case * .* * where an attachment or any other proceeding to punish for contempt has been usually adopted and practiced in a court of record to enforce a civil remedy or to protect a right of a party to an action or proceeding in such court." But this claim is made upon the theory that the Court is seeking to enforce alimony or the allowance specified in our statute, and which the Court has the power to make, which is analogous to alimony. But, while it is conceded that the payment of alimony has frequently been enforced by contempt proceedings, yet, as we have seen, this is not alimony, nor is it the allowance permitted by statute. Hence the imprisonment cannot be justified upon that ground. It is further claimed, however, that it comes within the third subdivision, which permits such punishment for the nonpayment by a party to an action of a sum of money ordered by the Court to be paid, where by law execution cannot be awarded for the collection of such sum. But why cannot execution be awarded to collect any sum adjudged to be due upon contract? Or, rather, by what other means known to the law are contract debts ever enforced? Does the provision mean that contempt proceedings may always be used where the wording of the judgment is too indefinite to support an execution? Respondent clearly has a right, under the stipulation, to a judgment upon which an execution would issue. If she have not such a judgment, it is not because the law forbids. Hence contempt proceedings are improper. But we by no means say that execution may not be issued on the judgment as it stands. We do not decide that point, but see *Lansing* v. *Lansing,* 4 Lans. 377; *Miller* v. *Miller,* 7 Hun, 208. Indeed, it may be correct, as counsel so ably argue, that in this state contempt proceedings may never be proper to enforce the payment of a money allowance as alimony. It is generally held, where contempt proceedings are used, that such proceedings are not exclusive, but that execution may be used to enforce the payment of money. *Barber* v. *Barber,* 21 How. 582; *Gray* v. *Cook,* 24 How. Prac. 432; *Becker* v. *Becker,* 15 Ill. App. 247; *Dinet* v. *Eigenmann,* 80 Ill. 274; *Downs* v. *Flanders,* 150 Mass. 92, 22 N. E. Rep. 585; *Foster* v. *Foster,* 130 Mass. 189; *Robinson* v. *Robinson,* 79 Cal. 511, 21 Pac. Rep. 1095; *Van Cleave* v. *Bucher,* 79 Cal. 600, 21 Pac. Rep. 954; *Allen* v. *Allen,* 72 Iowa, 502, 34 N. W. Rep. 303; *Taylor* v. *Gladwin,* 40 Mich. 232. But we do not express an opinion on the subject, as we have not a case of alimony before us. But we hold that no contempt proceedings were allowable in this case, and the order of the District Court is reversed. All concur.