Edward J. BOSCH, Plaintiff and
Appellant,

v.

Adele C. BOSCH, Defendant and
Respondent.

Civ. No. 8816.

Supreme Court of North Dakota.

May 1, 1972.

E. J. Bosch, Minot, for plaintiff and appellant.

Robert A. Alphson, Grand Forks, for defendant and respondent.

ERICKSTAD, Justice.

By judgment dated April 1, 1968, the plaintiff Edward J. Bosch was awarded a divorce from the defendant Adele C. Bosch and custody of their minor children. Edward was required to pay to Adele the sum

of $9,000 as "a full and complete settlement of all property rights, alimony, support and maintenance".

By motion dated August 10, 1971, Adele asked the court to determine the amount of alimony due from Edward to her and grant her a judgment for the amount due.

In response thereto, by motion dated August 12, 1971, Edward asked that the court allow a set-off for money paid to the Internal Revenue on a judgment due and owing jointly by Edward and Adele, on which Edward had paid in excess of $10,000 and on which Adele had made no payments.

In the event that a set-off was not permitted by the court, Edward asked that the court modify the divorce decree in accordance with Section 14–05–24, N.D.C.C.

Following the hearing of these motions on September 21, 1971, the court, by order dated September 30, 1971, denied Edward's motion and found him obligated to pay the sum of $2,948.52 as monthly alimony payments in arrears and interest.

Edward appeals from that order, contending that the divorce decree did not provide for alimony and that a set-off must be allowed. He does not contend in our court that the trial court was in error in refusing to modify the original divorce judgment.

Conceding that the judgment includes the term "alimony", it is his view that the judgment contains no alimony, that it dealt solely with property, and that accordingly a set-off should have been permitted under Section 28–20–33, N.D.C.C., and Section 9–01–08, N.D.C.C.

"28–20–33. Mutual judgments set off. —Mutual final judgments may be set off pro tanto, the one against the other, by the court, upon proper application and notice." N.D.C.C.

"9–01–08. Joint obligation—Contribution.—A party to a joint obligation or to a joint and several obligation who satisfies more than his share of the claim against all obligors may require a proportionate contribution from all the parties joined with him." N.D.C.C.

He relies on Kack v. Kack, 169 N.W.2d 111 (N.D.1969), Nugent v. Nugent, 152 N.W.2d 323 (N.D.1967), Stoutland v. Stoutland, 103 N.W.2d 286 (N.D.1960), Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960), Leifert v. Wolfer, 74 N.D. 746, 24 N.W.2d 690 (1946), Karteus v. Karteus, 67 N.D. 297, 272 N.W. 185 (1937), Sinkler v. Sinkler, 49 N.D. 1144, 194 N.W. 817 (1923), and Glynn v. Glynn, 8 N.D. 233, 77 N.W. 594 (1898).

We must consider these cases in the light of the judgment, the pertinent parts of which read:

"2. That the Plaintiff shall pay to the Defendant the sum of $9,000.00 as a full and complete settlement of all property rights, alimony, support and maintenance from the Plaintiff to the Defendant, and from the Defendant to the Plaintiff; said sum to be paid as follows: $200.00 within five days of March 5, 1968; $250.00 on July 1, 1968; $450.00 on December 31, 1968; that thereafter the Plaintiff shall pay to the Defendant the sum of $450.00 on July 1st and $450.00 on December 31st of each and every year thereafter until the entire sum of $9,000.00 is paid in full; that said payments shall bear no interest except if more than 30 days late, the delinquent payment shall bear interest of 4% until paid.

"3. That the Defendant shall forthwith make, execute and deliver to the Plaintiff a quit claim deed for all of her right, title and interest in and to the residence, the street address of which is 2520 Second Avenue Southwest, Minot, North Dakota; the building known as the 'duplex', the street address of which is 2603–2605 Second Avenue Southwest, Minot, North Dakota; and to a lake lot located three miles north of New Town, North Dakota.

"4. That the Defendant shall have as her sole and exclusive property and shall be permitted to remove the same from the residence, to-wit: one (1) living room set (now in basement of residence); the stereo; 2 round antique tables, finished by the Defendant; the set of Noritake china located in a china closet in the residence; a blonde bedroom set; all of her personal clothing and items in the home considered personal to the Defendant, such as ceramics, her jewelry, cosmetics, etc.; six dining room chairs which were in the home at the time the Defendant left the home.

"5. That all other personal property shall remain the sole and exclusive property of the person in whose possession it is; that the title of the 1959 Ford automobile in possession of the Defendant shall be transferred to the Defendant.

"6. That the Plaintiff shall pay all indebtedness, if any, upon the real estate, and the Defendant shall not be required to pay any part thereof; that the Defendant shall pay any and all indebtedness incurred by her since she left the home in May, 1967."

Pertinent also are parts of the stipulation upon which the judgment was based.

"WHEREAS, The parties hereto have arrived at a settlement of the matter of the custody of the minor children, support and maintenance, alimony and property rights, together with attorney fees, which settlement they desire to submit to the District Court for approval in the event a divorce is granted, and for inclusion in the Findings of Fact, Conclusions of Law, Order for Judgment and Judgment, now, therefore,

"IT IS STIPULATED AND AGREED BY AND BETWEEN the Plaintiff and Defendant as follows:

"1. That the Plaintiff shall have the care, control and custody of the minor children, subject, however, to the defendant's right of reasonable visitation at reasonable times and places; that the Plaintiff assumes the sole support and maintenance of said minor children;

"2. That for and in consideration of the sum of $9,000.00 and ownership of the following described personal property, to-wit, one (1) living room set (now in basement of residence); the stereo; 2 round antique tables, finished by the defendant; the set of Noritake china located in a china closet in the residence; a blonde bedroom set; all of her personal clothing and items in the home considered personal to the defendant, such as ceramics, her jewelry, cosmetics, etc.; six dining room chairs which were in the home at the time the defendant left the home; the Defendant acknowledges full and complete settlement of all property rights, alimony, support and maintenance from the Plaintiff, and the Plaintiff similarly acknowledges that he has no claim upon the Defendant; that said $9,000.00 shall be paid at the following times and in the following amounts: $200.00 within five (5) days of the date hereof; $250.00 on July 1, 1968; $450.00 on December 31, 1968; that thereafter the Plaintiff will pay to the Defendant the sum of $450.00 on July 1 and $450.00 on December 31 of each and every year thereafter until the entire $9,000.00 is paid in full; that said payments shall bear no interest, except if more than thirty (30) days late, the delinquent payment shall bear interest at 4% until paid;

"That the Defendant will forthwith make, execute and deliver to the Plaintiff a quit claim deed for all of her right, title and interest in and to the residence the street address of which is 2520 Second Avenue Southwest, Minot, North Dakota, the building known as the 'duplex' the street address of which is 2603–2605 Second Avenue Southwest, Minot, North Dakota, and to a lake lot located three miles north of New Town, North Dakota;

"That except as hereinbefore provided, all personal property now in the possession of each of the parties shall remain the sole and exclusive property of the person in possession thereof; that the title for the 1959 Ford automobile in possession of the Defendant shall be transferred to the defendant;

"3. That the Plaintiff shall pay all indebtedness, if any, upon real estate, and that Defendant shall not be required to pay any part thereof; that the Defendant shall pay any and all indebtedness incurred by her since she left the home in May, 1967;

"4. That the Plaintiff will pay on behalf of the Defendant the additional sum of $400.00 as and for attorney fees at the office of C. J. Schauss, attorney for the defendant;

"That the Defendant hereby withdraws her answer and counterclaim and consents to the immediate trial of the above entitled matter, and to the entry of judgment therein in accordance with the property settlement without further notice to her.

"That upon the execution of this property settlement, either of the parties hereto shall be free to dispose of any and all property belonging to him at the present time, and to be acquired in the future by either party by will, by sale, or otherwise, free of any claim by the other; that both of the parties hereto, that is, the plaintiff and defendant acknowledge that he has no claim upon the other."

The most recent decision of our court referred to us as an aid in our determination of the issue in this case and, incidentally, cited by both parties to this action, is that of Kack v. Kack, 169 N.W.2d 111 (N. D.1969). In that decision, this court, without reciting in detail all of the provisions of the divorce judgment or all of the provisions of the property settlement upon which the judgment was based, held that the part of the judgment providing for a payment of $500 monthly to the plaintiff as alimony was subject to modification on proper showing and was enforceable through contempt proceedings.

Paragraph VI of the findings of the trial court in *Kack,* entered on the 16th of February 1960, shows that the plaintiff, in renouncing in the "property settlement agreement" of January 30, 1960, any interest in property not specifically set over to her in the property settlement, disclaimed any right she had in property worth in excess of $200,000 at that time.

Paragraph VI reads:

"That Plaintiff and Defendant by their joint efforts extending over the past thirteen years have acquired a large amount of real and personal property; that among other things they have acquired a wholesale meat packing plant valued in excess of $150,000.00 at Dickinson, North Dakota, which plant is now held in the name of the Queen City Packing Company, a corporation, of which the said Defendant holds more than 80% of the Capital Stock in his own name and the balance, except for one share, in the names of the Plaintiff and her two children; that said corporation also owns and operates rendering plants at Hebron, North Dakota, and Miles City, Montana; that the said rendering plants have a combined value in excess of $100,000.00; that all of said businesses are presently being operated by the parties hereto and produce an average net profit of approximately $30,000.00 per year;" Kack v. Kack, File #8495.

In *Kack,* in exchange for renouncing any claim to property not specifically men-

tioned in the property settlement, the defendant agreed in the property settlement to give the plaintiff $5,000 to be applied upon the purchase of a home, to assign to the plaintiff a promissory note of $1,800, to arrange for the payment of a $400 bonus due the plaintiff from one of the defendant's companies, to transfer to the plaintiff title and possession of a 1960 four-door Impala Chevrolet automobile, and all of the household goods and furnishings owned by the parties located at a certain residence in Dickinson, to pay the costs of the education of their minor son, to pay the plaintiff $1,000 of a total of $2,000 presently owed the parties by a certain company, and to pay the plaintiff $500 monthly as alimony.

In the instant case, under the "stipulation" and the judgment, Mrs. Bosch received what appears to be furniture sufficient to equip an apartment, her personal belongings, and a commitment from Mr. Bosch to pay her alimony of $9,000 in installments. Mr. Bosch received Mrs. Bosch's commitment to execute and deliver to him a quitclaim deed transferring her interest in a residence at one address in Minot, a building known as a duplex at another address in Minot, and a lake lot.

In addition to property previously mentioned, Mrs. Bosch was to acquire title to a 1959 Ford automobile then in her possession, and Mr. Bosch was to pay on her behalf to her attorney the sum of $400 as attorney fees.

Although the record before us does not disclose the value of the property Mrs. Bosch agreed to quitclaim to her husband, it appears that this was the bulk of their property. Mr. Bosch also assumed the responsibility of caring for all of their children.

In this case, as well as in *Kack*, by the respective judgments and pursuant to the parties' stipulations, the husbands received the bulk of the property and agreed to pay alimony to their former wives.

The federal judgment which Mr. Bosch seeks to set off results from income tax liability apparently incurred by the Bosches for income earned in 1961, 1962, and 1963. The tax judgment apparently was not filed until 1970. Neither the stipulation nor the divorce judgment alerts us to the possibility of such a judgment. Neither specifically covers such an eventuality. The divorce decree is dated April 1, 1968, and it is contended that both parties knew of the tax audit prior to that date.

We believe that analysis here of the other cases cited by the parties would be of little help to us in determining this case. It is sufficient to note that *Kack* discloses a trend indicated in *Nugent* to permit modifications of divorce decrees upon proper showing, notwithstanding that the stipulations and judgments based thereon disposed of the property unequally, provided the party seeking the modification is not in contempt.

■ We believe, therefore, that the trial court was correct in refusing to permit Mr. Bosch to set off payments he had made on their joint obligation, and in refusing at the time to consider modifying the divorce judgment if Mr. Bosch was then in contempt of court for failing to keep the alimony payments current.

This is consistent with the view expressed by the writers of American Jurisprudence 2d.

"A judgment for alimony, being based upon the obligation imposed by law upon a husband to support his wife, cannot be extinguished or satisfied by setting off a claim in his favor against his wife, since the setoff would, in fact, deprive her of support. The rule applies even where the wife has been awarded alimony in a

lump sum, and even though the wife is a nonresident and is insolvent, so that the husband has no other means of enforcing his claim. A statute providing that mutual 'debts' may be set off does not authorize a husband to set off a debt of his wife against her award for alimony in a lump sum, since the alimony is not a debt within the meaning of the statute." 24 Am.Jur.2d Divorce and Separation § 530, pp. 654, 655.

See also 100 A.L.R.2d 926, § 2, and Ryan v. Ryan, 271 Ala. 243, 123 So.2d 102 (1960).

The trial court under Section 14–05–24, N.D.C.C., has the authority to modify a divorce decree upon proper showing.

"14–05–24. Permanent alimony—Division of property.—When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects." N.D.C.C.

Mr. Bosch has stated, among other things, in oral argument that the former Mrs. Bosch is now remarried. That fact and other alleged facts may upon proper showing justify a modification of the original divorce decree as it relates to alimony not yet due and payable. That matter we cannot decide in this appeal.

For reasons stated in this opinion, the order of the trial court denying the motion to set off is affirmed.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.