Emma WIEDRICH, Plaintiff and Appellant,

v.

Arthur WIEDRICH, Defendant and Respondent.

Civ. No. 8597.

Supreme Court of North Dakota.

Sept. 21, 1970.

William R. Mills, Bismarck, for plaintiff and appellant.

Maurice G. LaGrave, Mandan, for defendant and respondent.

STRUTZ, Judge, on reassignment.

The parties to this action were married in October of 1933. The record discloses that both parties worked hard on the farm until about fifteen years prior to the trial of this action, when domestic difficulties arose. These difficulties increased with the passing years, and their home became an atmosphere of constant quarrels and disagreements and sometimes violence. In August of 1964, the plaintiff left the farm home to reside in Bismarck. Seven children were born as the issue of the marriage, and all of them, with the exception of twin boys, were of age at the time this case came on for trial.

The plaintiff commenced her action for divorce in 1964, alleging extreme cruelty on the part of the defendant. The defendant thereupon filed and served his answer, denying the plaintiff's allegations and counterclaiming for a divorce from the plaintiff, also on the ground of extreme cruelty. After hearing, the trial court found that both parties were guilty of extreme cruelty and that each party therefore was entitled to an absolute decree of divorce.

The record reveals that the net assets of the parties are small, the court finding that their net worth was about $14,000. The decree entered in the action transferred all property to the defendant as trustee, and provided that such property be held in trust for the support of the minor twin sons, who are mentally defective and whose custody was awarded to the defendant. The decree further provided that if such trust arrangement, with required reports to be made by the defendant, should fail to function satisfactorily, the assets were to be liquidated and, after payment of debts and expenses, the net balance was to be distributed, one-fourth to each of the parties and the remainder to be used to establish a trust for the benefit of the two retarded sons to insure their continued care and support.

Sometime thereafter, upon application of the plaintiff, the defendant was required to show cause why he should not be removed as trustee and why he should not be punished for contempt for failure to comply with the provisions of the divorce decree. After hearing on the order to show cause, the court stated that the welfare of the two minor children was of prime concern to the court since both of such children are mentally retarded, suffering from retarded speech and convulsive disorders; that the best interests of these children would be served by keeping them with the father on the farm in the security of the family home. The court then ordered a modification of the original judgment by setting aside the trust provisions thereof in their entirety. It further ordered that the plaintiff be paid the sum of $7,500 as alimony, support, and property settlement, which sum was to be paid at the rate of $40 per month, plus five per cent interest on unpaid balances. To insure the payment of this amount, the plaintiff was given a lien on the real property, which property then was awarded to the defendant, subject to debts and encumbrances in addition to the plaintiff's lien. The defendant also was awarded the care, custody, and control of the two retarded children and was given the responsibility of their care, welfare, and maintenance, which responsibility was to continue even after the children reached their majority, if they continued to be incompetent and unable to care for themselves. In all other respects,

the previous judgment and decree was affirmed and approved.

From the order so modifying the decree and from the modified judgment and decree, the plaintiff has appealed to this court, demanding trial de novo.

The plaintiff raises a number of issues on this appeal, all of which can be considered together. The issues raised are whether the property of the parties was equitably distributed and divided by the court; whether the rights of the mentally retarded children are such that the plaintiff, as their mother, can be deprived of property which she worked to acquire and such property be set aside for the benefit of such children; and whether the defendant should have been awarded property which includes coal rights not needed for the operation of the farm.

■ Jurisdiction in matters relating to divorce, alimony, and property division is wholly statutory. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697 (1947).

Our statute provides that, when a divorce is granted,

"* * * the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, * * *." Sec. 14-05-24, N.D.C.C.

■ There is no fixed rule for determining the division of property, but the object to be sought is an equitable distribution thereof. Nicholson v. Nicholson, 126 N.W. 2d 904 (N.D.1964); Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966).

■ There is no requirement that such distribution be equal in order to be equitable. Rohde v. Rohde, 154 N.W.2d 385 (N.D.1967).

■ In providing for the custody and care of children of the parties, their welfare is the determining consideration of the court. Kucera v. Kucera, 117 N.W.2d 810 (N.D.1962). In considering and determining custody of children, the welfare and best interests of such children is the primary consideration. Gress v. Gress, 148 N.W.2d 166 (N.D.1967).

■ Our law also makes it the duty of the father and the mother of any person unable to maintain himself to maintain such person. Sec. 14-09-10, N.D.C.C. Thus the parents of these boys are responsible for their care and support, even beyond the date when the boys reach their majority, if at that time these boys are unable to support themselves as adults. After reviewing the evidence, it is obvious that the boys never will be self-supporting. A trial court is vested with a great deal of discretion in matters of custody and in determining what is in the best interests of a child, and a decision of the trial court on these matters will not be changed on appeal except where an abuse of discretion is shown. McKay v. Mitzel, 137 N.W.2d 792 (N.D.1965); Guldeman v. Heller, 151 N.W.2d 436 (N.D.1967).

■ We therefore find that the determination of the trial court which requires the defendant to support these boys was proper and justified under the evidence.

The plaintiff strenuously asserts that the distribution of the property by the trial court was not equitable. The record discloses that this property was appraised by several appraisers, including an appraiser for the plaintiff. The court found from the evidence that the reasonable market value of the real property was $35,000; that the cattle and other livestock were of a reasonable value of $2,695.40; and that the machinery and equipment were of the reasonable value of $3,500; making a total value of the property of the parties of $41,-195. The court further found that the real property was subject to mortgages in the sum of $8,835.05, plus accumulated interest; that the personal property was subject to chattel mortgages in the sum of $6,443.40, plus accumulated interest; or a total of

$15,278.45, plus interest, of secured debts. The court also found that numerous unsecured debts were owed by the parties, including money owed on farming operations such as for fuel oil and repairs, medical expenses, and loans from individual creditors. The defendant claimed these unsecured debts to be in the total sum of $16,759. However, the trial court found that some of these debts were of doubtful validity, and that the unsecured liabilities of the parties totaled $12,000. The total of the secured plus the unsecured liabilities, as found by the trial court, was in excess of $27,000. Thus the net value of the assets of the parties was found to be approximately $14,000, of which the court awarded the plaintiff $7,500.

The plaintiff contends that the amount of unsecured debts which the defendant claims are owed by them is excessive. The court heard all the witnesses and saw them on the stand and evidently reached the same conclusion, for it will be noted that the trial court reduced the amount of the unsecured debts claimed from almost $17,000 to $12,000. Surely this court, on the cold record, cannot find that the trial court was in error and should have reduced these claims still further. This court has repeatedly held that where the witnesses appear and testify before the trial court, the findings of the trial court must be given appreciable weight on appeal. Strobel v. Strobel, 102 N.W.2d 4 (N.D.1960); Renner v. Murray, 136 N.W.2d 794 (N.D.1965); Pauly v. Haas, 84 N.W.2d 302 (N.D.1957).

From the evidence submitted by the parties, the trial court concluded that the net worth of the parties is approximately $14,000. This determination, we believe, was justified by the evidence. It is obvious that, with all the property covered by mortgages and liens, the defendant would be unable to pay $7,500 to the plaintiff in cash. He also has the responsibility of supporting and maintaining the two incompetent boys for an indefinite period in the future. For these reasons, the court ordered the $7,500 due the plaintiff to be paid at the rate of $40 per month, together with five per cent interest on the unpaid balances from time to time. To secure the plaintiff, the court ordered that she have a lien on the real property for the balance due her, subject, of course, to the prior encumbrances thereon. We find that this determination was proper and justified under the evidence.

The plaintiff next asserts that the values placed on the real property by the trial court are low, because some of the land has coal deposits beneath its surface. We assume that this feature, if true, was considered by the appraisers for the parties in fixing the value of the land. The appraiser for the plaintiff was a person experienced in fixing values on this type of property. The record discloses that he had appraised more than 200 tracts of land for various owners in numerous condemnation proceedings and other proceedings. An appraiser with his experience would not fail to consider all of the factors which go to establish the value of a tract of land.

From all of the evidence in the record, we find that the distribution of the property was equitable and fair.

For reasons set forth in this opinion, the order modifying the judgment and the judgment and decree appealed from are in all things affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.