Jeanette **FILLER**, Plaintiff and Appellant,

v.

Galen **FILLER**, Defendant and Appellee.

Civ. No. 9003.

Supreme Court of North Dakota.

June 4, 1974.

Daniel J. Chapman, Bismarck, for plaintiff and appellant.

Christensen & Baer, Bismarck, for defendant and appellee.

VOGEL, Judge.

Judgment in this divorce case was entered on December 6, 1972, and provided for $400 per month in child support and $400 to be paid by the husband on the wife's attorney fees and costs. The attorney fees have never been paid.

The judgment provided for visitation by the husband from 1 p. m. to 6 p. m. on alternate Sundays, with custody on holidays to be alternated between the parties.

After the judgment was entered, the husband left his job in North Dakota and went to Moline, Illinois, and remarried. He apparently had no job in Illinois and fell far behind on his child-support payments and later went through bankruptcy. He brought his support payments up to date before the hearing in the trial court referred to below. No payments have been made since this appeal was filed.

During the time he was in default of child-support payments, the wife lost the heavily mortgaged home she had received as part of the property distribution, went on welfare, undertook a program to train herself to become eligible for employment, and moved herself and her children to a different home.

It is alleged by the wife that the children became bitter toward the father as the result of some of the foregoing facts, and they declined to visit with the father.

At any rate, the father, being in Illinois, was unable to take advantage of his five-hour biweekly visitation privileges. When he asked for more liberal visitation, the wife invariably replied that he could have the visitation provided for in the decree, and none other. When she moved, she obtained an unlisted phone and refused to give her former husband either the new address or the phone number.

Eventually, he moved the court for an order to provide for visitation on alternate holidays, but for an extended period covering several days, for a month's visitation in July of each year, for information as to the telephone number and the address of the children, and for visitation on weekends when he would be in North Dakota. The wife opposed the motion in its entirety and moved for an order declaring the defendant in contempt, increasing the child-support payments to $600 per month, re-

quiring the husband to pay certain other obligations (including some which had fallen upon her because of her husband's bankruptcy and her joint obligation to pay them), and for additional attorney fees.

Proof at the hearing was by affidavit. The court modified its order to provide: that the original $400 attorney fees be paid; that the support payments be reduced to $350 per month because the wife was now earning over $300 per month at her new job; that the husband would have a week's visitation with the children, out of the State, in the month of July; that the husband would have the right of visitation while he was in the State of North Dakota at times which did not interfere with the children's schooling; that the oldest son would be allowed to visit with his father at such other times as the son might choose; and that the wife must furnish the telephone number and address of the children to the father. The court also ordered that a further hearing would be had in six months' time (i. e., in June, 1974) upon application of either party. Further attorney fees were denied.

From this order, the wife appealed.

As the first issue, she invokes the Clean Hands doctrine, alleging that the husband is entitled to no relief because of his failure to pay the attorney fees.

The second issue raised is whether the court has the power to grant out-of-State visitation (1) without a showing that the interests of the children would be benefited and (2) without a showing as to the home situation into which the children would be introduced and without consideration of the attitude of the children.

The third issue is whether the court abused its discretion in reducing child-support payments on the showing made; the fourth is whether the court abused its discretion in denying further attorney fees; and the fifth is whether the court abused its discretion in generally permitting visitation by the husband without limitation except that "the same would not interfere with school."

It is apparent that the best interests of the children are not being served by the bickering between their parents. This case may be an illustration of the validity of the theses that we would serve the best interests of the child, or, otherwise stated, select the "least detrimental available alternative" by giving sole custody of children to one parent, who is allowed to make decisions as to visitation rights by the other, and that changes of custody thereafter are almost never justified, and that children being warred over should have legal representation of their own. All of these theses are presented in "Beyond the Best Interests of the Child" by Goldstein, Freud, and Solnit (1973).

Nevertheless, we believe that the orders made here were proper in their inception, although subsequent experience since they were made indicates that the parties cannot be trusted to work out the details of their relationship with the children, so the court must do so for them.

■ The equitable doctrine that he who seeks equity must do equity and the Clean Hands doctrine are not absolute bars to action by the court at the behest of a party who is delinquent in a divorce case. We have held that the court, in its discretion, may set aside a judgment although a delinquency exists. Gill v. Gill, 211 N.W.2d 374 (N.D.1973).

■ The wife cites in support of her argument three of our cases, Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960); Olson v. Olson, 76 N.D. 553, 38 N.W.2d 32 (1949); and Olson v. Olson, 77 N.D. 444, 43 N.W.2d 689 (1950). All of these cases implicitly or explicitly recognize that the rights of the children are paramount and that the court may at any time take up matters relating to the welfare of the children, even on its own motion. The second *Olson* case also involved difficult questions caused by the refusal of one party to par-

ticipate in hearings. While we referred in those cases to the need for recognizing the rights of the parents, the decisions are consistent with the rule that the court, in its discretion, may consider matters relating to the welfare of the children regardless of the delinquencies of either or both parents.

 We reiterate that the rights of the children are paramount to the rights of the litigants [Miller v. Miller, 76 N.D. 558, 38 N.W.2d 35 (1949)], and that the court may consider the welfare of the children and modify orders relating to them· at any time [Blanton v. Blanton, 142 N.W.2d 608 (N.D.1966)].

The second issue relates to whether the court abused its discretion by granting a one-week out-of-State visit by the children to the father without requiring evidence as to the home conditions of the father. We do not mean to suggest that a full-scale investigation or evidentiary hearing is necessary to justify a transfer of custody for a one-week period. However, we note that the trial judge stated at the hearing, during a discussion as to visitation out of the State:

> "I'm not going to force these children to go [out of the State] . . . unless I have a thorough investigation made of the living conditions down there and that would have to be done through the Juvenile set up. So that would take care of it then."

The order of the court thereafter issued contained no provision for an investigation of living conditions. Upon the hearing to be held in June pursuant to the court's earlier order, the judge may wish to reconsider the order and have an investigation made.

 The mother apparently believes that the trial court must make detailed determinations as to out-of-State travel, as was done in Blanton v. Blanton, *supra,* where provisions were made to have the children met during an airplane flight at the airport where they changed planes.

We do not intend to so hamstring the trial courts, and merely say, as we said in *Blanton,* that

> "The order and amended judgment is not final and conclusive, the matter remains open to modification, and either party may, as occasion arises and circumstances require, make further application and showing, and the court may modify any order made with respect to the children's custody." 142 N.W.2d 608, at 611.

We also note that the order here provided that the father would personally pick up and return the children to the mother.

 The third issue raised concerns the court's reduction of child-support payments from $400 per month to $350 per month. This reduction was made in accordance with a stipulation of the parties which was inadvertently omitted from the judgment, as both parties concede. The stipulation was that if and when the wife had separate earnings of $300 per month or more, the child-support payments would be reduced by $50 per month. We find no error, but, again, either party may at any time ask to have this matter reopened on consideration of changing conditions, including inflation.

The fourth issue alleges abuse of discretion in denying attorney fees on the motion, to the wife. The court denied the request for attorney fees, saying, "Since both of you had motions I am not going to allow any attorney's fees today but he has to pay that four hundred that you have coming."

 We hold that this was within the discretion of the trial court, but suggest that upon the rehearing to be held in June, the court may wish to reconsider the denial of attorney fees on the appellant's motion, and the court should consider granting attorney fees upon the appeal to this court and upon any further motion that may be heard. A request for attorney fees should not be denied merely for the reason that both parties submitted motions to the court,

but the court should consider the relative means of the parties, whether or not a moving party had arguably good reason for making the motion, and the amount of legal services rendered.

 As to the fifth point, the court was within its powers in making a general order permitting visitation whenever "the same would not interfere with school." As we mentioned above, subsequent experience has proved that the parties cannot, or will not, work out satisfactory arrangements between themselves, so the court may be required to do so for them at the next hearing.

At such hearing, which the court may hold on its own motion as well as upon application of either party, we suggest that the court make particular rules as to visitation, reconsider an allowance of attorney fees for the plaintiff as mentioned above, consider contempt proceedings because of the defendant's failure to pay attorney fees he was twice ordered to pay and for his failure to pay support money during the pendency of this appeal, and consider any other matters properly raised.

In summary, the findings of the trial court as to visitation, alimony, and child-support payments were not clearly erroneous, and the refusal of attorney fees upon appeal to this court was not an abuse of discretion. Hoster v. Hoster, 216 N.W. 2d 698 (N.D.1974). All of these matters may be reviewed at the forthcoming hearing before the trial court, however.

Affirmed.

ERICKSTAD, C. J., and PAULSON, J., concur.

TEIGEN, Judge.

I concur for the reason that the trial court did not, in my opinion, abuse its discretion. I am still of the opinion that a determination by the trial court of the right of visitation, alimony, and support pay-ments are not "findings of fact" subject to test by the "clearly erroneous rule" under Rule 52(a) N.D.R.Civ.P. See my special concurrence in Silseth v. Levang, N.D., 214 N.W.2d 361–365.

KNUDSEN, Judge.

I agree with the special concurrence of Judge Teigen.