Rosemary SCHUMACHER, Plaintiff and Appellee,

v.

John SCHUMACHER, Defendant and Appellant.

Civ. No. 9186.

Supreme Court of North Dakota.

May 12, 1976.

138

William R. Mills, Bismarck, for defendant-appellant.

Sperry & Schultz, Bismarck, for plaintiff-appellee; argued by Alfred C. Schultz, Bismarck.

PEDERSON, Judge.

John and Rosemary Schumacher were separated in 1968 and divorced in 1972. A receiver was appointed to manage their farm and was directed to use the income for mortgage and tax payments and support of the seven minor children.

On June 25, 1975, the receiver asked the court to authorize him to execute a new mortgage in the amount of $50,000 so that the first mortgage could be paid off, and to provide funds needed to take care of the children and to pay some anticipated taxes. On July 2, John asked that child support be modified, that the receiver's application to increase the mortgage be denied, that the receivership be terminated, and that the farm real estate be divided between the parties, with other provisions made to secure support of the children during their minorities. On August 28, Rosemary asked for an increase in child support for the four minor children of the parties residing with her.

The three motions were combined for a hearing. All three parties were present and were represented by counsel,[1] and offered testimony in support of their positions. The court found:

"I.

"That the plaintiff is in need of child support during the minority of all of the children and the defendant should be ordered to continue to pay $80.00 per month as child support, without reduction, until the youngest child reaches the age of eighteen.

"II.

"That there is a need for a receivership and that the receivership should not be terminated, but should continue so that the assets are preserved and the children are assured of an income until the youngest child becomes of age, the receiver having made and filed annual reports, approved by the court, showing able and competent management of the property.

"III.

"That a new loan is needed to provide additional funds for the care and support of the family and to meet other receivership obligations and that a new loan is authorized in the amount of $30,000.00."

The court ordered that the receivership should continue, that the receiver should execute a new mortgage to be amortized over a five-year period, and that he should apply the rent from the property to the mortgage payments and taxes, and to the support of the minor children. John appeals this order, alleging that findings of fact numbered II and III, and the order, are all clearly erroneous.

■ The receivership was originally established and continued under Section 14–05–25, NDCC, which states:

"The court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by appointment of a receiver or by any other remedy applicable to the case. When the wife has a separate estate sufficient to give her a proper support, the court in its discretion may withhold any allowance to her out of the separate property of the husband. The court, in rendering the decree of divorce, may assign the homestead or such part thereof as to the court may seem just, to the innocent party, either absolutely or for a limited period, according to the facts in the case and in consonance with the law relating to homesteads. The disposition of the homestead by the court, and all orders and decrees touching the alimony and maintenance of either party to a marriage and for the custody, education, and support of the children are subject to revision on appeal in all particulars, in-

1. Rosemary and the receiver were represented by the same counsel.

cluding those which are stated to be in the discretion of the court."

The trial court's memorandum opinion, supporting the order establishing the receivership in 1967, stated:

"The one asset [of the parties] which is fairly substantial is the land. It is felt that unless the farm land is properly managed, it is apt to be lost because of the large loan against it. The land will therefore be placed in receivership, the receiver to be a person agreed upon by counsel for plaintiff and defendant with all of the usual powers of a receiver. In addition the receiver will see that all income from the land is applied first against the taxes and the loan and that any amount in excess thereof be used for the support of the children during their minority."

John does not deny that the farm was poorly managed at that time and that the receivership was needed. He alleges, however, that conditions have changed to such an extent that the receivership is no longer required.

John states that in 1967 the land was worth $60,000 and the mortgage against it was $27,000. He alleges that, in 1975, the land was worth over $150,000 and that the mortgage had been reduced to $22,000. He stated that in 1967, with seven minor children, there were 720 child-months of support to pay. Now, eight years later, there are only four minor children and only 90 child-months left.

John also stresses changes in the living conditions of the parties involved. He alleges that when he and Rosemary were living together they took no vacations, the children were poorly dressed, and, as Rosemary put it, "they didn't have nothing."

The standard of living of Rosemary and the children has improved steadily since the receivership was established. All of the children, except the three youngest, have gone through high school and one is going to college. The children are all dressed well and the family has had at least one vacation. Rosemary has had an average income of $880 per month. She has been earning $500 per month, the receiver has been giving her $300 per month, and John has contributed $80 per month in child support. There was testimony, however, that because of health problems Rosemary's future earnings will be reduced considerably.

John's undisputed testimony shows that his standard of living is much lower. John stated that he is trained and was raised to be a farmer. Two of the five quarters of land were given to John by his father to help him realize his ambition to farm. He claims that by being deprived of his farm he was forced into low-paying jobs as a bartender and taxicab driver. John earns $380 per month when he is working and his expenses are $55 per month in car payments, $60 per month for the sleeping room in which he lives, and $80 per month for court-ordered child support. He has borrowed money from his father to meet his expenses and he has not paid him back.

■ It is well established that courts invested with jurisdiction or power to grant divorces and to award alimony and support money have the power to change or modify the amount to be paid or the method by which it is paid whenever circumstances of the parties have materially changed. Section 14–05–24, NDCC; *Foster v. Nelson,* 206 N.W.2d 649 (N.D.1973); *Wiederanders v. Wiederanders,* 187 N.W.2d 74 (N.D.1971); *Bryant v. Bryant,* 102 N.W.2d 800 (N.D. 1960).

■ This court has also repeatedly held that a trial court's findings as to alimony, support, and distribution of property are matters within the sound discretion of the trial court. *Wiederanders v. Wiederanders, supra; Cosgriff v. Cosgriff,* 126 N.W.2d 131 (N.D.1964); *Sjol v. Sjol,* 76 N.D. 336, 35 N.W.2d 797 (1949). Although *Wiederanders, Cosgriff* and *Sjol* speak in terms of abuse of discretion as the scope of review, it has been well established by this court that a review of the trial court findings in alimony, support, and distribution of property matters is limited to a determination of whether or not they are "clearly erroneous" within the purview of Rule 52(a), N.D.R.

Civ.P. *Larson v. Larson,* 234 N.W.2d 861 (N.D.1975); *Grant v. Grant,* 226 N.W.2d 358 (N.D.1975); *Hoster v. Hoster,* 216 N.W.2d 698 (N.D.1974); *Novlesky v. Novlesky,* 206 N.W.2d 865 (N.D.1973); *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972).[2]

Rule 52(a) states in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973), the term "clearly erroneous" was interpreted as follows:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. *Nee v. Linwood Securities Co.,* 174 F.2d 434 (8th Cir. 1949); Wright & Miller, Federal Rules of Civil Procedure, Sec. 2585, p. 729 et seq."

The trial court found that the receivership should be continued so that the assets would be preserved and the children would be assured support until the youngest child becomes of age. At present there are only three minor children who are entitled to support from John as one has turned eighteen since the hearing. The oldest of these three will be eighteen on December 11, 1976, and no longer entitled to court-ordered support. The youngest will reach the age of majority on May 28, 1979.

Section 14–05–25, NDCC, states that "the court may require either party to give *rea-sonable security* for providing maintenance \* \* \*." [Emphasis added.]

At the time the receivership was established, it was reasonable security to require that all income from the farm land go toward preserving the land and for support of the minor children, considering the relative worth of the land, the amount of indebtedness of the parties, and the number of child-months of support to be paid. At the time of the September 1975 hearing, however, the need for security had been diminished by payment of 630 child-months of support and reduction of the mortgage, while the actual security, the land, had more than doubled in value. We thus find that the security for providing maintenance was more than reasonable, that there was no longer a need for the receivership to continue in its present form, and that the court's finding of fact number II was clearly erroneous.

It follows that finding of fact number III concerning the new mortgage is also clearly erroneous as it is based on the premise that there was a continuing need for receivership in its present form. We are not, however, unmindful of the welfare of the children. We realize that their needs require more supplementation than that provided by John's court-ordered $80 per month.

John wanted the farm divided so that he could farm his share and pay support out of his farming profits. However, he has not managed a farm for over eight years and there is nothing on the record to show that his farming ability has improved. Also, he does not presently have any farm machinery nor money to pay the operating expenses. He also proposed selling part of the property to provide security for support of the children, with the remainder being divided between himself and Rosemary. This is a reasonable and acceptable request, as it would provide adequate security for

---

**2.** The dispute over the application of Rule 52(a) to matters in divorce proceedings may be academic when the issue involves a matter which is in the discretion of the trial court. In each case where the majority of this court concluded that a finding was clearly erroneous, the minor-ity found an abuse of discretion, and vice versa. See *Filler v. Filler,* 219 N.W.2d 96 (N.D.1974); *Silseth v. Levang,* 214 N.W.2d 361 (N.D.1974); *Goff v. Goff,* 211 N.W.2d 850 (N.D.1973); *Johnson v. Johnson,* 211 N.W.2d 759 (N.D.1973).

support. However, oral statements by counsel at the appellate hearing disclosed that the receiver had already leased the land on a three-year lease for $12,000 per year. This action by the receiver was legal as the appellant had not applied for a stay of the order from which he was appealing. We are also informed that a new mortgage has already been executed. In the absence of a stay order, this was also rightfully done and was, perhaps, prudent as the record shows that the receiver's funds were exhausted and he had no funds with which to pay support payments during the two months prior to the hearing. The receiver was also in need of funds for loan payments and tax payments that were to come due in late 1975 and early 1976. What has now been done we cannot undo. The problems we are faced with must be resolved with the facts in mind that the receivership apparently must continue for at least three more years because of the lease, and because of the new mortgage on the property that must be amortized over the next five years it may be impracticable to terminate the receivership until that has been accomplished.

We stated in *Larson v. Larson,* 234 N.W.2d 861, 865 (N.D.1975), that the court must consider the needs and burdens of the divorced father. In *Hoster v. Hoster,* 216 N.W.2d 698, 699 (N.D.1974), at syllabus 2, we said:

"In determining the amount a divorced father should pay for support of a minor child and alimony to a former wife, the court must be mindful not only of the needs of the child and of the former wife, but of the divorced father; and while he should support the child and pay alimony as best he can, he should not be burdened to the extent that all incentive is to be destroyed but some balance must be found between the needs of the child, the former wife, and the father's ability to pay."

Whether John's position in life is voluntary or involuntary, it is evident that he has more than his share of financial burdens. Though the support payments John makes may seem minimal, they are a large expenditure considering his poverty-level income.

We believe that it is a sound practice to require the divorced parent who does not have custody to pay child support, even if it is at a minimum level. The payment of support helps the parent to recognize the legal responsibilities that parents have for their children even though they do not reside with them. In this case, however, John has been paying support twice, for, along with the court-ordered support of $80, he has also been deprived of his land for support purposes. Even so, he has perhaps not contributed as much as Rosemary toward the support of their children. Considering the decreasing amount of child-months of support that John is obligated to pay, along with the increased value of the land, it is conceivable that there will be more than enough surplus income from the land to meet all reasonable need for support of the children. Assuming that the last sentence in Section 14–05–25, NDCC, would otherwise authorize us to revise the order of the district court, in this case we cannot make this determination as we have only counsel's statement as to the new mortgage, the taxes on the property, and the new lease and the rental income therefrom, and John does not challenge finding of fact number I which required him to pay $80 per month out of his earnings. We therefore remand for a further hearing wherein the trial court, in considering the new mortgage, the new lease, Rosemary's decreased earning capabilities, and the amount of support money needed, shall determine whether support requirements have been property balanced with needs that John is experiencing, and to what extent now the security for child support can be made more realistic under Section 14–05–25, NDCC.

Reversed and remanded for proceedings in accordance herewith. No costs should be allowed on this appeal.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.