**Ramona A. BECKER, Plaintiff and Appellee,**

v.

**Calvin J. BECKER, Defendant and Appellant.**

**Civ. No. 9384.**

Supreme Court of North Dakota.

Jan. 13, 1978.

As Corrected April 4, 1978.

Kessler & Anderson, Grand Forks, for defendant and appellant; argued by Damon E. Anderson, Grand Forks.

Shaft, McConn & Fisher, Grand Forks, for plaintiff and appellee; argued by Patrick W. Fisher, Grand Forks.

PEDERSON, Justice.

Ramona A. Becker was granted a divorce from Calvin J. Becker in May 1975. A stipulation and property settlement agreement entered into by the parties was found to be fair and equitable and apparently in the best interests of the children, and was incorporated in the court's findings of fact, conclusions of law, and the divorce decree. In May 1977, Calvin instituted proceedings to modify the decree by moving for: (1) a change of custody of one of the parties' three minor children from Ramona to himself, (2) a reduction in child support, and (3) a change in medical insurance provisions. Ramona did not contest the custody transfer motion but, in her return to Calvin's motion, she requested: (1) an increase in child support, (2) alimony, and (3) attorney fees. After a hearing on the merits, the court issued an order amending the divorce decree, providing that: (1) Calvin have custody of one of the children (Donald), (2) support payments for the two children remaining with Ramona be increased from $150 to $200 per child per month, (3) alimony of $200 per month be paid by Calvin to Ramona, and (4) attorney fees in the amount of $350 be paid by Calvin to Ramona. The order makes no disposition of Calvin's motion for a change in medical insurance provisions.

This is an appeal by Calvin, in which he challenges only the increase in the child support payment, the award of alimony, and the order to pay Ramona's attorney fees. We affirm the award of attorney fees and the increase in child support. The award of alimony is reversed.

## I.

Calvin asserts that the increase in child support is clearly erroneous. A material change in circumstances of the parties must be shown before a modification of the initial decree is proper. *Foster v. Nelson,* 206 N.W.2d 649 (N.D.1973); *Bryant v. Bryant,* 102 N.W.2d 800 (N.D.1960). The trial court has the power to modify child support provisions of a divorce decree, regardless of any stipulation or agreement of the parties. See *Kack v. Kack,* 169 N.W.2d 111 (N.D.1969). In *Bryant v. Bryant, supra,* at 807, this Court rejected the contention that a stipulation between the parties to a divorce is not subject to modification or

change by the court. See *Foster v. Nelson, supra,* and *Peterson v. Peterson,* 131 N.W.2d 726 (N.D.1964). The restrictions upon the ability of the parties to rescind contractual stipulations, as discussed in *Rummel v. Rummel,* 234 N.W.2d 848 (N.D. 1975), and *Lawrence v. Lawrence,* 217 N.W.2d 792 (N.D.1974), do not apply to the power of the court to modify a decree which may have been based upon a contractual stipulation.

The trial court heard evidence touching upon the substantial increase in Calvin's income. It also heard evidence that his expenses have eaten away all of that increase. The trial court issued an order which substantially increased the amount of per child support Calvin is to pay. In asserting that the court's decision is clearly erroneous, Calvin cites *Schumacher v. Schumacher,* 242 N.W.2d 136 (N.D.1976), where this Court, in a unanimous decision, held that Rule 52(a), NDRCivP, governs the review of the trial court's findings in alimony, support and distribution of property.

■ At first blush, Rule 52(a) appears to except decisions on motions, other than certain motions to dismiss not here relevant, from the preparation of findings of fact and conclusions of law. The reason for this is simple: most motions are not "tried upon the facts." [1] Motions to modify divorce decrees are exceptions. A fact-finding process is necessary before it can be determined that the requisite material change in conditions has occurred. See *Voskuil v. Voskuil,* 256 N.W.2d 526, 530 (N.D.1977).[2]

■ Findings of fact and conclusions of law are, in fact, made in the oral opinion of the trial court delivered at the conclusion of the hearing below. The trial court clearly sets forth the basis for its conclusion that a material change of circumstances has taken place.

The trial court stated that Ramona's termination of her employment was due to illness, that she was compelled to depend upon welfare and food stamps, and that she had needed to borrow approximately $4,000 from relatives in order to supplement the support money received for her children.

The trial court also noted that Calvin's situation was one in which he must receive quite a substantial benefit from the income of his fiancee. It was further noted that Calvin had a "lawn toy" (the trial court referred to a Sears Roebuck tractor and tiller purchased for $2,000 by Calvin and used to take care of his fiancee's yard), and that "he could be spending a lot of money unnecessarily that should be going for the support of his children."

■ From these findings of the respective conditions and circumstances of the parties, the trial court concluded that there had been a substantial change which warranted amendments of the decree.

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

1. In 5A, Moore's Federal Practice, 2d Ed., ¶ 52.-08, at 2734, 2735, the following statement is made: "As originally promulgated, Rule 52(a) stated that findings of fact and conclusions of law should be made in all actions 'tried upon the facts' by the court, and in granting or refusing interlocutory injunctions. It was silent as to the necessity of findings on motions other than those pertaining to interlocutory injunctions. The 1946 amendment added the following provision as the last sentence to Rule 52(a): 'Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).' While there had been

some confusion, the amendment is mainly clarifying in nature and a statement of what most of the cases had held." And, at 2739: "The 1946 amendment should be read in conjunction and harmonized with the earlier provision of the Rule requiring findings in all actions 'tried upon the facts'; . . . ."

2. It could be argued that attempts to seek amendment of a final decree would be more appropriate by supplemental pleadings under Rule 15(d), NDRCivP, or by a petition; however, it is customary in this State to proceed by motion, and that is not prohibited provided that appropriate service is made.

In this case the only evidence which does *not* support the trial court's finding is that by which Calvin attempted to show that his expenses already absorb all of his income. It is clear that the trial court did not accept that as credible evidence. Trial courts are the judges of the credibility of witnesses. Rule 52(a), NDRCivP. We find that there is ample support for the trial court's finding, and therefore affirm that portion of the order appealed from which modifies the amount of child support paid by Calvin to Ramona.

## II.

■■■ Calvin also asserts that the trial court abused its discretion in awarding attorney fees to Ramona for services rendered in the hearing below. Attorney fees necessary to prosecute or defend an action for divorce are to be awarded in the sound discretion of the trial court. Section 14–05–23, NDCC. Such award will not be interfered with by this Court unless it is affirmatively established that the trial court has abused its discretion. *Johnson v. Johnson,* 211 N.W.2d 759 (N.D.1973). Calvin has failed to affirmatively establish an abuse of discretion. Accordingly, that portion of the order awarding Ramona attorney fees in the amount of $350 is affirmed.

## III.

Calvin next contends that the award of $200 monthly alimony was improper. He argues that, there having been no award of alimony in the initial decree, there is nothing to modify pursuant to § 14–05–24, NDCC. Ramona responds by claiming that the initial decree did mention alimony but awarded none. She thus asserts that there was a decree dealing with alimony and that that portion of the decree is subject to modification. She argues that there is no

difference between an award of alimony in the amount of zero dollars or in a larger amount, concluding that either award is subject to modification in the appropriate circumstances.

This is an issue of first impression before this Court, although many other jurisdictions have had occasion to discuss it. Although those jurisdictions derive their conclusions from an assortment of statutes, those statutes can be classified, for the purposes of this discussion, into two types: those which *expressly* grant jurisdiction to award alimony as a modification of the initial divorce decree regardless of whether or not it was initially awarded, as does New Jersey [3] and those, like § 14–05–24, NDCC, which have been consistently construed to not permit a subsequent award of alimony unless alimony was initially awarded or the decree specifically reserved jurisdiction to make a later alimony award.

■■■ The need for statutory authority has been described as jurisdictional. *Warner v. Warner,* 219 Minn. 59, 17 N.W.2d 58, 62 (1945). Actions for divorce are not equity actions in the normal sense. The jurisdiction of the courts of this State to grant divorces and to order alimony and property division is entirely statutory. *Wiedrich v. Wiedrich,* 179 N.W.2d 728 (N.D.1970); *Leifert v. Wolfer,* 74 N.D. 746, 24 N.W.2d 690, 169 A.L.R. 633 (1946).

The only statute giving the courts of this State authority to grant permanent alimony and division of property in divorce cases is Section 14–05–24, NDCC, as supplemented by Section 14–05–25, NDCC. Section 14–05–24 reads:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to pro-

---

**3.** "Alimony; maintenance; custody and maintenance of children; security; failure to obey order; sequestration; receiver; modification of orders. Pending any matrimonial action brought in this state or elsewhere, *or after judgment of divorce or maintenance,* whether obtained in this state or elsewhere, the court may make such order as to the alimony or maintenance of the wife, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, *reasonable and just,* and require reasonable security for the due observance of such orders. . . . ." [Emphasis added.] N.J.Rev.Stat. 2A:34–23.

vide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

Section 14–05–24, NDCC, is derived from a civil code developed by the Commissioners of the Code, State of New York, popularly referred to as the Field Code after its chief architect, David Dudley Field.[4] Though there have been changes made in the language of the statute, the final sentence, "The court from time to time may modify its orders in these respects," has remained the same for more than 110 years. California Civil Code § 139 (also derived from the Field Code through the efforts of David Dudley Field's brother, Stephen J. Field, a member of the First Legislative Assembly of California and later a Justice of the United States Supreme Court) contains language identical to § 14–05–24, NDCC. In *McClure v. McClure,* 4 Cal.2d 356, 49 P.2d 584, 586 (1935), the California court said:

"Section 139, Civil Code, empowers the court in a divorce action to make an allowance to the wife for her support, and to 'modify' its orders in this respect from time to time. Where the divorce decree is silent as to alimony, there is no order in respect of the support of the wife to be modified."

See also, earlier case of *Howell v. Howell,* 104 Cal. 45, 37 P. 770 (1894).

Other states whose laws appear to be derived from the Field Code have ruled likewise, e. g., *Haug v. Haug,* 195 Neb. 378, 238 N.W.2d 455 (1976), construing § 42–324,

R.R.S.1943; *Cameron v. Cameron,* 31 S.D. 335, 140 N.W. 700 (1913), construing § 92, Civil Code, Revised Code of South Dakota 1903. While it is true that there were no contemporaneous interpretations when the predecessor to § 14–05–24, NDCC, was adopted (in 1865 when the Territorial Legislature enacted the proposed New York Civil Code), however, when The Revised Codes of the State of North Dakota, 1895, were adopted, the California Supreme Court had issued its opinion in *Howell v. Howell, supra.* Nevertheless, even subsequent views of the Supreme Courts of California, Nebraska, and South Dakota, rendered in construing statutes identical to our own § 14–05–24, are persuasive and should not be ignored.

We are also persuaded by the reasoning displayed in decisions from non-Field Code states, such as New York (*Kamp v. Kamp,* 59 N.Y. 212 (1874), Sickels Vol. XIV), and Wisconsin [*Bassett v. Bassett,* 99 Wis. 344, 74 N.W. 780 (1898)]. See also, comprehensive annotation, 43 A.L.R.2d 1387.

Jurisdiction granted for the initial decree can be maintained if there is an award of alimony. Section 14–05–24, NDCC. It is also generally accepted that jurisdiction to later award alimony may be expressly reserved in the initial decree. *Kronforst v. Kronforst,* 21 Wis.2d 54, 123 N.W.2d 528 (1963); *Daw v. Daw,* 212 Minn. 507, 4 N.W.2d 313 (1942). A general reservation of jurisdiction is not effective. *Unser v. Unser,* 86 N.M. 648, 526 P.2d 790 (1974).

The only authority cited by Ramona to counter this argument is *Limpert v. Limpert,* 119 N.J.Super. 438, 292 A.2d 38

---

**4.** The Commissioners submitted their final version of a civil code to the New York Legislature in 1865. Although the New York Legislature never enacted the code, the 1865 session of the Dakota Territorial Legislature did, and approval was given by the Territorial Governor on January 12, 1866. Thus it is apparent that there has been a common misconception that the source of civil code sections in North Dakota is the California Civil Code. [The same misconception applies to South Dakota—see

*Cameron v. Cameron,* 31 S.D. 335, 140 N.W. 700, 701 (1913)]. California adopted its civil code in 1872, derived from the Field Code, but seven years after it was the law in Dakota Territory. See, Laws of Dakota, 1865–66–67, Civil Code, Chapter II, Article IV, Section 73; Preface to Revised Codes of North Dakota, 1895; and the Ninth and Final Report of a Civil Code for the State of New York, 1865, Section 73.

(1972).[5] *Limpert* was decided under the New Jersey statute (cited in footnote 3) which specifically authorizes an award of alimony after the initial decree. It is not authority under our statute. We also are unable to accept Ramona's contention that the statement in the original decree that "neither party shall pay alimony to the other" amounts to a reservation of jurisdiction. That statement is not ambiguous. It is a clear denial of alimony and does not even hint of a reservation of jurisdiction to consider alimony later. The parties are bound by their contract provision for no alimony even if the court is not.

While we agree that an award of any nominal sum would suffice to maintain the court's jurisdiction, we cannot conclude that the award of no alimony is the same as an award of zero dollars, which is then equated, for practical purposes, with an award of one dollar per year. The next logical step for such an argument is that no mention of alimony, or a denial of alimony, in the initial decree amounts to an award of zero dollars.

In oral argument, counsel for Ramona noted that he had read advice in a popular magazine to the effect that a woman contemplating divorce should see that her attorney secures for her at least one dollar of alimony per year. While such an award would have the effect of maintaining the court's jurisdiction should a modification be later sought, this same effect may be obtained by an express reservation of jurisdiction. The express reservation of jurisdiction is much preferred because it avoids the shabby pretense that a nominal award is "just." In either case the trial court should make the reasons for the retention of jurisdiction clear in its findings. See *Hansen v. Hansen,* 259 Wis. 485, 49 N.W.2d 434 (1951), and *Schall v. Schall,* 259 Wis. 412, 49 N.W.2d 429 (1951).

It is clear that the same material change in the circumstances of the parties which justified the modification of the award for child support might justify a modification of an alimony award.[6] However, in this case, where there was no initial award of alimony to modify and no express reservation of jurisdiction, the trial court lacked jurisdiction to order the payment of alimony. Even the most severe change in circumstances cannot provide that jurisdiction. See *Smith v. Smith,* 350 Mo. 104, 164 S.W.2d 921 (1942), a case much like the instant one.

We therefore reverse that portion of the amended judgment which provides for the payment of alimony. Upon remand, the trial court may award attorney fees for this

5. Our attention has been called to the rationale of the New Hampshire courts which have consistently held that property division, alimony, and child support are always subject to modification. *Labrie v. Labrie,* 113 N.H. 255, 305 A.2d 687 (1973). We conclude that the New Hampshire statute, RSA 458:19, precludes the application of New Hampshire decisions to our situation. RSA 458:19 provides: "Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just, provided that in cases in which no children are involved, or in which the children have reached the age of majority, *said order shall be effective for not more than three years from the date thereof,* but such order may be renewed, modified or extended if justice requires for periods of not more than three years at a time; and may compel the husband to disclose, under oath, the situation of his property; and before or after the decree, may make such orders and use such process as may be necessary." [Emphasis supplied.]

6. A significant share of the difficulty encountered when attempting to, by analogy, apply the rationale of other courts relates to the inconsistency of terminology. "Alimony" is not defined in our statute and appears to mean "support" as well as "allowance." *Glynn v. Glynn,* 8 N.D. 233, 77 N.W. 594 (1898), illustrates that, at one time, "alimony" was in the nature of a penalty payable by a husband, whose fault caused the divorce, to an innocent wife. It cannot mean that today. See §§ 11–16–01(15), 14–03–17(2) and (3), 14–05–25, 14–06–05, 14–08–07(1), and 65–13–15(5)(a), in addition to § 14–05–24. Further legislative attention is indicated. If the courts should have jurisdiction to grant relief in hard cases, such as this one, the Legislature should specifically so provide.

appeal as may be just and reasonable. Appeal costs otherwise will not be allowed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VOGEL, Justice, dissenting in part and concurring in part.

I dissent from Part III of the majority opinion, which holds that the trial court has no authority to modify that part of the judgment which states that "neither party shall pay alimony to the other." I do so because the majority disregards the plain language of Section 14–05–24, North Dakota Century Code. I concur in the result only in Part I because much of the discussion is, in my opinion, based on a misunderstanding of Rule 52(a) and would require a useless, expensive, and unnecessary modification of the practice in the district courts.

*Modification of Provision for No Alimony*

The majority opinion recognizes that the jurisdiction of the courts of this State to grant divorces and order alimony and property division is entirely statutory. The only statutes giving the courts of this State authority to grant permanent alimony and division of property are Section 14–05–24, N.D.C.C., and Section 14–05–25, which supplements it. Section 14–05–24 reads:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

The language as to "suitable allowances to the other party," of course, refers to what is commonly called alimony. *Stoutland v. Stoutland's Estate,* 103 N.W.2d 286, 288 (N.D.1960).

Section 14–05–24 by its plain terms gives to the courts of this State the power, upon granting a divorce, to (1) divide the property of the parties between them, (2) order the payment of alimony, (3) require either or both of the parties to support the children, and (4) "modify its orders in these [that is, all three of the foregoing] respects" from time to time.

This statute is the only authority our courts have to grant increases or decreases of alimony or increases or decreases in the amount of child support each parent must pay. Up until the present moment, no decision of this court has ever held that a parent who was not required by a divorce judgment to pay child support could not be compelled to pay it thereafter, nor have we ever held that a former spouse who was not required to pay alimony in the original judgment could not be compelled to pay alimony thereafter. The court now, in the case before us, says that a judgment which provides, as this one did, that "neither party shall pay alimony to the other," cannot be subsequently modified to require payment of alimony. This court has said that changes in circumstances of the husband will justify the reduction of an award of alimony. See *Hoster v. Hoster,* 216 N.W.2d 698 (N.D.1974), and *Larson v. Larson,* 234 N.W.2d 861 (N.D.1975). A ruling which permits reduction of alimony because of a catastrophic illness of one spouse, but does not permit a requirement of the payment of alimony to the other party if struck by catastrophic illness, cannot be logically justified.

The present case is a good illustration of the unfairness of such arbitrary rules as the court now imposes. Mrs. Becker has had open-heart surgery and is dependent upon welfare and food stamps for her subsistence, which her former husband is able to provide. If the trial court had originally awarded one dollar per year alimony, according to the rule imposed by the majority opinion, the amount of alimony could be modified, but since the court awarded no alimony in the original judgment, Mrs. Becker must stay on welfare and food stamps.

If such a result were compelled by our statutes or prior decisions, I might agree, but there are no prior opinions of this court on the subject, and Section 14–05–24, in my opinion, is violated by the majority opinion.

The majority attempts to justify the harsh result by citing cases from other States. Cases from other States are not binding upon us, even if the statutes were identical, or even similar, which they seldom are. Even if all the forty-nine other States had court decisions in accord with the majority opinion, we would still be bound by our statutes and not by court decisions of the other forty-nine States.

I prefer a new honor to an old disgrace. I reiterate what I said in dissent in *Schneider v. Baisch,* 256 N.W.2d 370 (N.D.1977), that there is no reason why we should follow unreasonable decisions from other States, and it is better to make good law than to import bad law.

Most of the decisions from other States either cite and rely upon *Kamp v. Kamp,* 59 N.Y. 212 (1874), or upon other cases which in turn cited and relied upon *Kamp.* The majority says that it is "persuaded by the reasoning displayed" in *Kamp v. Kamp* and *Bassett v. Bassett,* 99 Wis. 344, 74 N.W. 780 (1898), which I will discuss below.

The fact of the matter is that neither *Kamp* nor *Bassett* is in point. Both of them are based upon statutes which are widely different from the statute we must apply. In *Kamp,* the main opinion by Justice Allen adopts, as to the point we are discussing, the discussion in the opinion of Justice Grover, which dissents on other grounds. It is clear from considering the two opinions together that the New York statute in effect at the time provided that divorce judgments could be modified later *only* as to maintenance of the children and custody, care, and education of the children. The statutes did not permit modification of alimony awards, regardless of whether alimony was awarded in the original judgment or not. Thus this case has no bearing on the interpretation of a statute such as ours, which permits modification of alimony awards. Yet, decisions in other States, including California [see *Howell v. Howell,* 104 Cal. 45, 37 P. 770 (1894)], and now our own court, blindly cite *Kamp* to support a proposition for which it does not stand.

The same is true of *Bassett v. Bassett, supra.* The statute construed in *Bassett* provided that "After a judgment *providing for alimony* or other allowance for the wife and children, or either of them, . . . the court may from time to time, . . . revise and alter such judgment, respecting the amount of such alimony or allowance, . . . ." [Emphasis added.] Obviously a court in Wisconsin could modify only a judgment *which provided for* alimony, not one which did not. Again, the difference in the statute is obvious, and the "reasoning" should not persuade anyone as to how to construe an entirely different statute.

Most of the other cases are based upon the extremely technical point that a statute authorizing a court to "modify" a provision in a judgment could not be used to grant alimony which contained no provision at all as to alimony. Such cases include *Cameron v. Cameron,* 31 S.D. 335, 140 N.W. 700 (1913); *Howell v. Howell, supra;* and *Haug v. Haug,* 195 Neb. 378, 238 N.W.2d 455 (1976). The annotation at 43 A.L.R.2d 1387 is limited to such cases. Of course, such reasoning would not apply in the case before us, because the subject of alimony is mentioned in the judgment and therefore, under that line of reasoning, the judgment could be modified.

For all of these reasons, I dissent from Part III of the majority opinion.

When we have a point of first impression in this State, and can make a choice of law to be applied in the future, and one of the choices is dictated by statute and conforms to good sense and justice, I can find no reason for adopting an outdated, unjust, and anachronistic rule of law from other States based on statutes different from ours or on misapplication of court decisions interpreting such statutes.

*Application of Rule 52(a)*

The majority opinion continues what appears to be an effort of one of the judges of

this court to rewrite Rule 52(a) and then provide a commentary on it. I have protested against this tendency before, in a concurring opinion in *Fine v. Fine,* 248 N.W.2d 838, 844 (N.D.1976), and elsewhere without visible result. In the present case, the majority says, "At first blush, Rule 52(a) appears to except decisions on motions, other than certain motions to dismiss not here relevant, from the preparation of findings of fact and conclusions of law." Rule 52(a) *does* except decisions on motions, and appearances at first blush have nothing to do with it. Rule 52(a) requires findings and conclusions of law in *actions,* and says that findings of fact and conclusions of law are unnecessary on decisions on *motions* except motions under Rule 12 or Rule 56 or as provided in Rule 41(b). None of these exceptions applies here. The majority opinion is thus, to put it charitably, misleading.

The majority opinion says, "A fact-finding process is necessary before it can be determined that the requisite material change in conditions has occurred. See *Voskuil v. Voskuil,* 256 N.W.2d 526, 530 (N.D.1977)."

This language seems to imply that a hearing and testimony are necessary on motions to amend judgments as to alimony, property division, and custody in divorce cases. This is not correct. Many, perhaps most, motions for such modification are based upon affidavits and may or may not require a hearing. In *Filler v. Filler,* 219 N.W.2d 96, 98 (N.D.1974), we said:

> "Proof at the hearing was by affidavit."

The citation to *Voskuil v. Voskuil,* 256 N.W.2d 526 (N.D.1977), is a reference to a statement supported by only a citation to Rule 52(a). Rule 52(a), as I have shown, does not require findings of fact and conclusions of law in decisions on motions of this kind. It requires them only in actions, and on certain kinds of motions not including motions to modify divorce judgments. The statement in *Voskuil* is therefore incorrect, and I decline to follow it hereafter.

If this court wants to impose upon the district courts a requirement that they follow certain procedures in determining whether changes of conditions of divorced parties have occurred, the court should do so under its power to supervise the district courts, not by reference to a rule which contains no language on the subject. Or, if the court is determined to modify Rule 52(a), it should be done by the same process by which the rule was first adopted—a written proposal, communicated to the Bar and the public, and a decision to adopt the rule, made after public notice and hearing, as required by Sections 27–02–08 to 27–02–15, N.D.C.C.