Betty L. **MARTIAN**, Plaintiff and Appellee,

v.

Nick **MARTIAN**, Defendant and Appellant.

Civ. No. 10270.

Supreme Court of North Dakota.

Jan. 14, 1983.

---

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff and appellee; argued by Donald L. Peterson, Minot.

Nick Martian, pro se.

PEDERSON, Justice.

Nick Martian appealed from a judgment which granted Betty Martian a divorce, awarded Betty $50,000 in a property division, and awarded her $500 per month alimony. The judgment also enjoined Nick "from interfering with, harassing, molesting or otherwise interfering with" Betty. We remand for the correction of one part of the judgment but otherwise affirm the judgment.

Betty was the only witness called to testify at the trial. Nick, acting pro se, declined to cross-examine her. Betty's testimony supports each of the findings of fact; none are clearly erroneous. Rule 52(a), NDRCivP.

At the beginning of the trial Nick challenged the court's jurisdiction on the ground of "separation of church and state," and orally demanded a jury trial.

## JURY TRIAL

Article I, Section 13 of the Constitution of the State of North Dakota provides in part: "The right of trial by jury shall be secured to all, and remain inviolate." Article 7 of the Amendments to the United States Constitution also preserves the right of jury trial.

"The provision in our constitution that right of trial by jury shall remain inviolate neither enlarges nor restricts that right but merely preserves it as it existed at the time of the adoption of our constitution." *In Re R.Y.*, 189 N.W.2d 644, 651 (N.D.1971).

Nick does not contend that jury trials were available in divorce cases under common law nor by statute at the time the constitution was adopted. "Since such actions [divorce] were tried at common law by the ecclesiastical courts without the aid of a jury, they are generally not within the scope of constitutional provisions preserving the right to a jury trial where it existed at common law." 50 C.J.S. Juries § 16(d).

"Jurisdiction to grant divorces is dependent entirely upon statutory and constitutional provisions. Courts of equity have no inherent jurisdiction to hear and determine divorce suits, but such suits are regarded as being in the nature of a suit in equity. It is obvious, therefore, from a consideration of the origin and character of divorce proceedings generally, that in the absence of statutory provisions to the contrary, divorce cases are properly tried by the court without a jury. A constitutional guaranty of the right to jury trial in cases in which the prerogative existed at common law or was secured by statute at the time of the adoption of the constitution is of no avail in a divorce suit in a jurisdiction in which such cases have always been of equitable cognizance and in which the only statutes relating to jury trial of such cases were enacted after the

adoption of the constitution...." 24 Am.Jur.2d, Divorce and Separation § 335. See also 27A C.J.S., Divorce § 151.

"Actions for divorce are not equity actions in the normal sense. The jurisdiction of the courts of this State to grant divorces and to order alimony and property division is entirely statutory." *Becker v. Becker,* 262 N.W.2d 478, 482 (N.D. 1978).

The statutory authority relating to divorce is generally found in Chapter 14–05, NDCC. It contains no provision for jury trial. See also Rule 38, NDRCivP.

### SEPARATION OF CHURCH AND STATE

Nick quotes from the Bible:

"What ... God hath joined together, let not man put asunder."[1] Matthew, Chapter 19, Verse 6, and Mark, Chapter 10, Verse 9, King James Version.

■ It is Nick's contention that when the courts of this state assumed jurisdiction in this divorce case, they infringed upon his religious freedom contrary to the First Amendment to the United States Constitution, which provides that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..."[2]

and contrary to Article I, Section 3 of the North Dakota Constitution which provides:

"The free exercise and enjoyment of religious profession and worship, without discrimination or preference shall be forever guaranteed in this state ...."

Although this court has recently confronted church-state separation contentions in school cases,[3] it has not heretofore directly considered the relationship between divorce and religious freedom. Nick has not cited any case from any other jurisdiction directly in point and we have found just one.

■ The Oklahoma Supreme Court in a recent unanimous decision affirmed a trial court decree granting a divorce even though it was contended that the court was without authority "because it contravenes the religious oaths and vows taken by the parties, and, the authority of God, the Bible and Jesus Christ." *Williams v. Williams,* 543 P.2d 1401 (Okla.1976). The court distinguished ecclesiastical obligations from those involving the civil contract between the parties granted by law. We conclude that the reasoning of the Oklahoma court is sound and should be applied here.

Principles defined by the United States Supreme Court in *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878), as to a conflict between law and a belief in the doctrine of polygamy, support this conclusion.

The decree in this case specified that Nick should pay Betty, through her attorney, the sum of $50,000 within 30 days of July 2, 1982, or surrender the home to be sold and the proceeds distributed. This was stayed upon appeal and, by necessity, a new deadline will have to be set. The case is remanded for entry of an amended judgment accordingly. In all other respects the judgment is affirmed.

ERICKSTAD, C.J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

1. The quotations from Matthew 19 and Mark 10 involve the teachings of Jesus as to the permission to divorce as given by the law of Moses. For other Biblical references to divorce see 1 Corinthians, Chapter 7, verses 10–13; Matthew, Chapter 5, verses 31–32; Luke, Chapter 16, verse 18; and from the Old Testament, Leviticus, Chapter 21, verses 7 and 14; Numbers, Chapter 30, verse 9; Deuteronomy, Chapter 24, verses 1 and 2; Isaiah, Chapter 50, verse 1; and Jeremiah, Chapter 3, verse 1.

2. The First Amendment is made applicable to the states through the Fourteenth Amendment. See *State v. Rivinius,* 328 N.W.2d 220 (N.D. 1982).

3. *State v. Rivinius,* 328 N.W.2d 220 (N.D. 1982); *State v. Shaver,* 294 N.W.2d 883 (N.D. 1980); *Grace Lutheran Church v. N.D. Employment,* 294 N.W.2d 767 (N.D.1980).