Betty L. **MARTIAN**, Plaintiff and Appellee,

v.

Nick **MARTIAN**, Defendant and Appellant.

Civ. Nos. 11187, 11205.

Supreme Court of North Dakota.

Jan. 20, 1987.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for plaintiff and appellee; argued by Irvin B. Nodland.

Kenner Law Firm, Minot, for defendant and appellant; argued by Carl O. Flagstad.

MESCHKE, Justice.

Nick Martian appeals from a post-divorce judgment which imposed a constructive trust on the marital home to enforce payments to Betty Martian for property division as well as for spousal support, and which reduced, rather than eliminated, his spousal support obligation. We hold that the decree ordering sale of the still jointly-owned home to pay amounts due was appropriate equitable relief. We modify the continuation of the "constructive trust" for future support payments and otherwise affirm.

*Martian v. Martian,* 328 N.W.2d 844 (N.D.1983), affirmed a judgment granting Betty a divorce from Nick after 36 years of marriage. The judgment awarded Betty $500 per month spousal support and divided the marital property, setting aside their jointly-owned home to Nick but requiring him either to pay Betty $50,000 within 30 days or to surrender the home to be sold and the proceeds distributed. Because the time for Nick's election was stayed on appeal, the case was remanded for designation of a new deadline.

Upon remand, however, the parties stipulated and an amended judgment was entered that Nick pay Betty $11,712.93 immediately; $10,000 on April 10, 1984; $10,000 on April 10, 1985; $10,000 on April 10, 1986; and $8,287.07 on April 10, 1987. The provisions about sale of the home and distribution of its proceeds were dropped, but neither the stipulation nor the amended judgment dealt with transfer of Betty's interest in the jointly-owned home.

Nick paid the initial amount of $11,712.93 and the 1984 installment of $10,000, but defaulted on support payments for April, May and June of 1983. On Betty's motion, on June 9, 1983, the trial court found that Nick was able to make the payments, held him in contempt, and ordered him to pay $1,750 in arrearages and attorney fees.

Nick again defaulted on his support payments. In March, 1984, Betty sued for delinquent support from December of 1983 to March of 1984. While this action was pending, in April of 1984, Nick lent $8,390 to the "Mary Center of North America Shrine" without obtaining a promissory note or security. Likewise, on May 13, 1984, Nick made a handwritten document which purported to transfer to the Shrine virtually all his property, including his car, pickup truck, trailers, machinery, equipment, tools, household furnishings and antiques, but which reserved to Nick the right to retain and use any of the items. Three days later, Nick responded to Betty's motion for summary judgment for the delinquent support payments, arguing that a hearing should be held because of his recent retirement and his recent "transfer of property," stating: "I have decided to follow the lifestyle of St. Francis of Assisi: chastity, obedience, and poverty."

The Court granted Betty summary judgment for $2,098.80. When Nick failed to pay, Betty levied on Nick's bank account. After the levy, with costs, Nick still owed, and has yet to pay, $858.01 on that judgment. In spite of this, later in 1984 Nick turned over more money to the Shrine, again without security, increasing his total "loan" to the Shrine to $10,700. Nick has since testified that the "apostolate director" of the Shrine misappropriated the money and fled to Canada.

Nick again defaulted on support payments after June, 1984. He also failed to pay the $10,000 installment on property division due on April 10, 1985. In June, 1985, Betty sued Nick again for delinquent support and the missed $10,000 installment. She also sought a constructive trust on the jointly-owned home, asking that Nick be ordered to vacate the home so that it could be sold and the proceeds applied on amounts due her, and that remaining proceeds be held in trust as security for future payments.

Nick admitted the amounts due, but defended on the theory that the claim for a constructive trust failed to state grounds for relief and that a constructive trust was "not necessary since the Plaintiff is well secured for the indebtedness owed by virtue of the fact that she is a joint owner of the real property." Nick also moved to amend the divorce judgment to eliminate his spousal support obligation because of changed circumstances.

After trial of the consolidated cases, the trial court determined that Nick had acknowledged Betty's ownership interest in the home; that the home remained as security for property settlement payments under the amended judgment; that Betty was entitled to have a trust imposed upon the home; that the home be sold and that from the proceeds, Betty receive all amounts due her on the division of property (including the installments of $10,000 and $8,287.07, which were not due until April 10, 1986 and April 10, 1987, respectively); and that remaining proceeds be held pending decision on spousal support

issues. Later, the court decreed that Betty also be paid all past due support out of remaining proceeds; that Betty have a continuing lien on remaining proceeds for future support payments; and that Nick's monthly support obligation be reduced to $300.

On this appeal, Nick argues that the trial court erred in imposing a constructive trust upon the jointly-owned home and in continuing Nick's obligation to pay support. His main argument is that this case does not fit one of the categories outlined for an implied trust in N.D.C.C., § 59–01–06,[1] and therefor the trial court was "without statutory authority to impose the implied trust" to enforce Betty's judgment. Nick points out that the equitable relief decreed is the same as the provision for enforcement of property division in the initial judgment which was deleted by agreement after remand of the first appeal. On the other hand, Betty argues that Nick's evasive conduct is "wrongfully detaining" her property which qualifies for an implied trust under N.D.C.C., § 59–01–06. Betty urges that Nick's misapplication of his assets can only be remedied by imposing a trust on the still jointly-owned home.

N.D.C.C., § 14–05–25 outlines the power of a trial court to enforce payments due upon divorce:

"The court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, *and may enforce the same by appointment of a receiver or by any other*

1. Section 59–01–06 states:

"*59–01–06. Implied trust—How created.* An implied trust arises in the following cases:

"1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner.

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it.

"3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration.

"4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

*remedy applicable to the case."* (emphasis added.)

The trial court was thus authorized to employ any "remedy applicable to the case" to enforce payments adjudged for both property division and support. Therefore, we consider whether sale of the still jointly-owned home to pay those amounts was a "remedy applicable to the case."

■ Nick's argument that the trial court was "without statutory authority to impose the implied trust" assumes that § 59–01–06 is an exclusive list of situations which qualify for an equitable remedy. We do not agree that the equitable powers of our trial courts are so narrowly confined. *See* N.D. C.C., § 32–04–02. A judicial decree for sale of property to apply the proceeds on an adjudicated obligation is well within the range of equitable powers of a trial court for a wide variety of reasons. For example, see N.D.C.C., § 32–08.1–03. The circumstances of this case justify imposition of a post-judgment equitable remedy, however characterized. Several distinct, but established, doctrines of "equitable lien" support such an equitable remedy in this case.

One form of equitable lien is equivalent to a constructive trust. This formulation is summarized in the Comment to § 161 on "Equitable Lien" in the Restatement of Restitution:

"A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant not only by imposing a constructive trust and compelling the surrender to the plaintiff of property held by the defendant (see § 160), but also by imposing an equitable lien upon the property in favor of the plaintiff. In some situations the plaintiff is entitled only to enforce an equitable lien; in others he can at his option enforce either an equitable lien or a constructive trust.

\*   \*   \*   \*   \*   \*

"Where property is held by one person subject to an equitable lien, the person having the equitable lien can enforce it by a proceeding in equity. Where the equitable lien is on a fund, for example a bank deposit, it is enforced by a direction to pay the claimant out of the fund. Where the equitable lien is upon other property the court will ordinarily decree that unless the holder of the property pays the amount of the lien the property be sold and out of the proceeds the amount of the lien be paid. Where, however, the person holding the property is not at fault, and where the foreclosure of the lien by a sale of the property would cause a hardship to the holder of the property, the court will not necessarily order an immediate sale of the property." Restatement of Restitution, § 161 comment a and b (1937).

The connection between an implied trust and an implied equitable lien is generally recognized. *See* 51 Am.Jur.2d *Liens* § 24.

Implication of this form of "equitable lien" for amounts adjudicated to be due to a former spouse is not unusual. Thus, in *Matter of Bailey*, 20 B.R. 906 (Bankr.W.D. Wis.1982), an equitable lien was imposed in favor of a former wife on property set aside to the husband by an earlier divorce decree, where she had not yet quitclaimed her interest in the property when the husband filed bankruptcy still owing her a $23,100 property division payment which was a dischargeable debt. *See also Sullivan v. Sullivan*, 393 N.W.2d 521 (Minn. App.1986) where a constructive trust was imposed on a lake cottage set aside to the husband after he defaulted on child support payments and the evidence "showed he had no intention of making any further support payments." *Id.* at 522. *And cf. Wiedrich v. Wiedrich*, 179 N.W.2d 728 (N.D.1970); *Ellison v. Ellison*, 79 N.D. 46, 54 N.W.2d 656 (1952); and *David v. David*, 724 P.2d 1141 (Wyo.1986) which approved the imposition of a lien in the divorce judgment to secure long-term payments owed by the husband, even though the wife had quitclaimed her share of their ranch real

estate to him in the property settlement agreement which was incorporated in the judgment.

■ Between former spouses, wrongful conduct which justifies implying a trust or lien can be breach of an obligation adjudicated in the divorce judgment. Thus, *Simonds v. Simonds*, 45 N.Y.2d 233, 380 N.E.2d 189, 408 N.Y.S.2d 359 (1978), imposed a constructive trust in favor of the first wife on the proceeds of life insurance paid to decedent's second wife, where decedent had breached a provision in a separation agreement, incorporated into a divorce decree, to maintain a policy of life insurance for the benefit of his first wife. *See also Carpenter v. Carpenter*, 150 Ariz. 130, 722 P.2d 298 (Ct.App.1985). Therefore, if Nick's argument is that his conduct is not sufficiently wrongful to call for equitable relief, it must fail. *Barker v. Barker*, 75 N.D. 253, 27 N.W.2d 576 (1947).

■ Sale of the property to apply the proceeds on the obligation is the method of enforcing such an implied lien. Thus, in *Disanza v. Gaglione*, 482 N.Y.S.2d 413, 126 Misc.2d 232 (Sup.Ct.1984) an equitable lien on an apartment house had been granted to the ex-wife in a 1977 judgment because of the ex-husband's fraudulent act in acquiring his ex-wife's interest. When he made no effort to pay the amount of the lien, after collecting rents for over 7 years, the ex-wife sued to enforce the lien by sale of the property. The ex-husband resisted on the ground that the lien was not enforceable until the property was sold. The court directed that the premises be sold to satisfy and discharge the lien. *See also Freitag v. Freitag*, 318 N.W.2d 760 (N.D. 1982).

The equitable relief fashioned by the trial court is appropriate for Nick's evasion of his adjudicated marital obligations by misapplying his funds and assets. Whether the equitable relief was accurately labeled is not important. It was authorized under the generic heading of "constructive trust" for "wrongful" conduct, as expressed in N.D.C.C., § 59–01–06, subsections 1 and 2.

A more difficult aspect of Nick's argument is that the equitable relief awarded was the same as the enforcement mechanism in the initial judgment which was omitted from the amended judgment by agreement. But, if agreement of the parties is important in shaping the equitable relief, then the distinct, but equally established, doctrine of an equitable lien by agreement supports the equitable relief decreed in this instance.[2] *Cf. Bailey v. Bailey*, 53 N.D. 887, 207 N.W. 987 (1926).

■ To enforce an equitable lien created by agreement, a court need not identify all of the essential elements for implying a trust or lien. It need only find that the parties' transaction, whatever form or name the parties gave it, should be regarded as a lien. 51 Am.Jur.2d *Liens* § 25; *Standorf v. Shockley*, 16 N.D. 73, 111 N.W. 622 (1907) (instrument in form of chattel mortgage, but intended as security on real property, construed as an equitable mortgage).

■ Nick acknowledged in his answer that Betty "is well secured for the indebtedness owed by virtue of the fact that she is a joint owner of the property." And, the trial court found:

"The original intention of the court was for plaintiff's right to property set-

---

2. An equitable lien arising from agreement is distinct from an equitable lien implied to prevent unjust enrichment:

"*Equitable liens by agreement.* The term 'equitable lien' is used in at least two fairly disparate senses. In one sense it may refer to a lien created by express or at least implied-in-fact agreement of the parties, ... Such liens are 'equitable' in the sense that they may have failed to comply with some requirement for establishment of a 'common law' lien, but are recognized and enforced in the courts of equity.... The equitable lien created by express or implied-in-fact contract is mentioned here to distinguish it from the equitable lien imposed by the courts to prevent unjust enrichment." Dobbs, *Handbook on the Law of Remedies*, § 4.3, p. 249 (1973). *See also* 51 Am.Jur.2d *Liens* § 25 (1970).

tlement to be secured by a requirement the [sic] defendant pay to plaintiff the sum of $50,000 within 30 days of entry of judgment. The parties, by subsequent stipulation, agreed defendant could pay said amount in time payments as set forth in the amended judgment dated April 19, 1983. The parties did not by said agreement, however, release plaintiff's ownership interest in the residential home of the parties by which the court had originally secured payment of said $50,000."

These circumstances demonstrate that the parties intended a lien on the marital home to secure the property division payments. A trial court may enforce an equitable lien by whatever means it deems appropriate to do justice between the parties. 51 Am. Jur.2d *Liens* § 66 (1970). Thus, the parties' agreement to omit the specific enforcement provision of the initial divorce judgment should not bar equitable enforcement of the lien agreed upon through Betty's continuing joint ownership in the marital home.[3]

Accordingly, we affirm the trial court's judgment ordering sale of the marital home and application of the proceeds to property division payments due Betty. We also affirm the judgment ordering that remaining proceeds be applied toward past due support owed by Nick. Because sale of the property is at judicial direction, applying remaining proceeds on amounts adjudicated to be past due for support is the same as an execution levy against funds. *See* N.D.C.C., § 28–21–14. But, while there may be circumstances which justify imposing an implied trust or lien for amounts to become due in the future, we conclude that this issue has not been sufficiently developed by the parties to continue a lien or "trust" on remaining proceeds of the sale of the home, if any, to pay support payments which will become due in the future. *But see Leifert v. Wolfer,* 74 N.D. 746, 24 N.W.2d 690 (1946). To that extent only, we direct modification of the judgment.

■ Nick argues that the trial court erred in only reducing, rather than eliminating, his spousal support obligation due to changed circumstances. We recently said in *DeVore v. DeVore,* 393 N.W.2d 739, 740 (N.D.1986):

"A trial court's determination on matters of spousal support and property division are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. [Citation omitted.] A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. [Citation omitted.]"

We cannot say that Nick's current income of nearly $1200 per month in railroad retirement is insufficient to continue some spousal support, or that the reduced payment of $300 per month spousal support is too much. Therefore, the trial court's determination on spousal support was not clearly erroneous.

We affirm the reduced support obligation of $300 per month. We affirm the order for sale of the marital home and application of the proceeds on all accumulated amounts then due Betty, as adjudicated by the trial court, but we direct modification of the judgment insofar as it continues a "trust" on any remaining proceeds of the sale of the home to pay future spousal support. Costs on appeal are taxed in favor of Betty.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in the result.

---

**3.** For a discussion of the problems in (and possible solutions to) securing payment of property divisions in North Dakota, see Trentadue, *Obtaining An Enforceable Division of The Marital Estate: Now A Matter of Preventive Law In North Dakota,* 61 North Dakota Law Review 301 (1985).