**Sandra STRANKOWSKI, Plaintiff and Appellee,**

v.

**Charles STRANKOWSKI, Defendant and Appellant.**

**Civ. No. 890040.**

Supreme Court of North Dakota.

Oct. 25, 1989.

Lundberg, Nodland, Schulz, Lervick & Tharaldson, Bismarck, for defendant and appellant; argued by Irvin B. Nodland.

Ottmar & Ottmar, Jamestown, for plaintiff and appellee; argued by Joanne H. Ottmar.

GIERKE, Justice.

This is an appeal by Charles Strankowski from a district court order which required that any proceeds from judgment or settlement arising from Charles' accident be placed with the court. We affirm.

Sandra Strankowski and Charles Strankowski were divorced on May 29, 1985. Custody of three children born of the marriage was awarded to Sandra. Pursuant to the divorce decree, child support was set at $50.00 per child per month for the period from June 1985 to December 1985. In January of 1986, the child support was to automatically increase to $125.00 per child per month.

After the divorce on July 9, 1985, Charles brought a motion to amend so that his child support payments would not increase automatically on January 1, 1986. His motion was denied by the district court judge. The following year on July 28, 1986, the district court ordered that the proceeds from the sale of Charles' house be placed in trust as security for child support payments in an amount equal to one year's support. Upon sale of the house, $4,500.00 was placed in trust for the children's support. One year later, the trust account was depleted as Charles failed to make any

additional child support payments voluntarily.

On November 20, 1987, Charles was brought to court on an Order to Show Cause by the Child Enforcement Agency. The Referee found Charles in contempt and ordered him placed in jail. However, upon being taken over to the Law Enforcement Center, Charles was able to pay his child support arrearages. Further, during the proceeding, the Referee found that Charles had gambled away insurance proceeds in the amount of $800.00, had jointly purchased a $1,600.00 bird with his girlfriend, and had been able to immediately post a $1,000.00 bond when he was involved in an aggravated assault incident.

Following several motions brought by Charles to amend his child support payments, Charles' child support payments were reduced to $100.00 per child per month effective March 1988. However, Charles failed to make his payments and, once again, was brought into court on an Order to Show Cause for contempt for failure to pay child support. The Referee found that the only support payment Charles had voluntarily paid since the divorce was on February 12, 1988, in the amount of $100.00. Further, testimony at the hearing revealed that at the time of their divorce, Charles had told Sandra that "it will be a battle to get me to pay my child support." Charles was found in contempt of court and, upon failing to pay his past due child support obligations, was sentenced to 30 days in jail.

This appeal centers around an insurance settlement Charles was negotiating with American Family Insurance as a result of a personal injury he sustained in an automobile accident. Sandra became aware of these negotiations when Fred Frohlich, an adjuster for American Family, contacted her concerning any pre-existing injuries that Charles may have had at the time of the accident.[1]

After learning of Charles' negotiations with American Family, Sandra brought a motion to provide security for support payments pursuant to Section 14–05–25, N.D. C.C.[2] Sandra motioned the district court to enter an order directing that any monies received or payable to Charles as a result of the automobile accident be paid directly to the district court to be held as security for Charles' past and future child support payments. At the time of the October 13, 1988 motion, Charles was $3,425.00 in arrears on his child support obligation.[3]

Resisting the motion, Charles testified that the reason he had not adequately fulfilled his child support obligation was simply because he was unable to pay. During 1986, he had invested in three businesses which, subsequently, turned out to be poor investments.[4] He further testified that since the beginning of 1988 to the time of the hearing October 24, 1988, he had paid himself only $1,000.00 with the majority of his living expenses coming from his girlfriend, who lived with him.

The district court granted Sandra's motion noting that, with regard to past arrearages, both parties on the record had stipulated "that once the defendant [Charles] had settled his personal injury action with the insurance company, he would become

1. Mr. Frohlich testified that American Family extended a settlement proposal of $15,000.00 to Charles in an attempt to resolve Charles' claim. Charles refused the offer.

2. Section 14–05–25, N.D.C.C., outlines the power of a trial court to enforce payments due upon divorce:

   "The court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by appointment of a receiver or by any other remedy applicable to the case."

3. At the time of oral argument, September 21, 1989, Mr. Strankowski was approximately $6,725.00 in arrears on his child support obligations.

4. Counsel for Charles introduced into evidence an exhibit which contained an unaudited statement of Charles' business operations for an eight-month period ending August 31, 1988. The statement indicated that Charles' three business ventures suffered a combined net cash loss of $6,613.98 for the eight-month period.

current on his child support arrearage."[5] With regard to future support payments, the court stated that Charles should post security for his future child support payments. The court recognized that, while Charles' businesses continued to fail, the needs of the children continued. Thus, the court ordered that once a sum certain was ready to be paid by American Family to Charles, American Family would initially pay Charles' reasonable attorney's fees with the remaining balance of the proceeds being deposited with the court. From this balance, Sandra would then receive the total sum of money owed her for past due child support payments. Finally, the court stated that after the past due arrearages had been paid out, the court would hold a hearing to determine what portion of the money would be held as security for Charles' future child support obligations.

The issue on appeal is whether the trial court erred in purporting to impose an equitable lien against any settlement or judgment Charles may receive as a result of the automobile accident in which he was involved. Charles contends that an equitable lien cannot attach to the proceeds of any settlement or judgment which he may receive. We disagree.

Charles relies upon *Martian v. Martian,* 399 N.W.2d 849 (N.D.1987), to support his position that the trial court's imposition of an equitable lien to provide security for future support payments was improper. We believe Charles has misinterpreted our holding in *Martian.* In *Martian,* Nick Martian had deliberately failed to make spousal support payments to his ex-wife, Betty. The trial court ordered that their jointly owned house be sold with the proceeds being used to pay Betty the amounts due to her. Further, the trial court ordered that Betty have a continuing lien on the remaining proceeds of the house sale for future support payments. We reversed the trial court's order for the continuing lien for future support payments holding that:

> "While there may be circumstances which justify imposing an implied trust or lien for amounts to become due in the future, we conclude that this issue has not been sufficiently developed by the parties to continue a lien or 'trust' on remaining proceeds of the sale of the home, if any, to pay support payments which will become due in the future."

It appears that Charles has misplaced his reliance on *Martian* by confusing our dicta regarding an undeveloped issue with, as Charles contends, a settled rule of law.

In *Martian,* we recognized that, between former spouses, a trial court is justified in implying a trust or lien as a result of wrongful conduct by a spouse which results in a breach of an obligation adjudicated in the divorce judgment.

In this case, Charles' repeated failure to pay his adjudicated child support obligations justified the trial court, in the exercise of its broad equitable power, to require that any monies from judgment or settlement be placed with the trial court for further disposition. Further, Section 14-05-25, N.D.C.C., authorizes a trial court to employ any "remedy applicable to the case" to enforce payments adjudged for support. Clearly, Charles' disregard for his support obligations makes the imposition of a lien or trust a remedy applicable to this case.

Secondly, Charles contends that since he has not yet commenced a lawsuit, any proceeds therefrom are merely contingent or speculative in nature and, therefore, it was improper for the trial court to impose a lien or trust upon the proceeds. We disagree. The trial court in its order stated, "the Court believes the defendant should post security for future child support payments, but because the amount of the settlement or judgment is too speculative, it will not

---

**5.** The trial judge inferred this stipulation based on Charles' testimony that he would have no objection to the payment of his support arrearages out of any judgment or settlement which he may receive. However, as Charles' counsel indicated during oral arguments, Charles premised his agreement regarding the arrearages on the condition that the court delete the portion of the order which directed that any remaining money be placed with the court until further hearing.

order a trust or lien to be placed on that unknown amount of settlement or judgment." Thus, the trial court seemed to refuse imposing a trust or lien upon the proceeds but rather ordered that a further hearing be held regarding the amount to be held as security for future payments pursuant to Section 14–05–25, N.D.C.C. However, it appears that the trial court's action did in fact impose a lien or trust upon the contingent proceeds.

The majority of authorities conclude that a cause of action for a personal injury is a chose in action which is a form of property. *Boyce v. Boyce,* 541 A.2d 614, 618 (D.C. App.1988). Choses in action constitute one of the most common types of trust property. Bogert, Trusts & Trustees § 115 (2d. ed. 1984). In the instant case, we believe the trial judge properly shaped his decree and the enforcement of it in accordance with the general practice on enforcing child support obligations and Section 14–05–25, N.D.C.C.

Finally, Charles argues that the trial court order interferes with his ability to legitimately pursue his claim and leaves him with no incentive to pursue the claim. In essence, Charles argues that, if he prevails with his lawsuit, it is quite possible that after attorney's fees and his child support arrearages are paid out of the proceeds, nothing will be left for him. Charles' argument that he will gain nothing from bringing the lawsuit overlooks the obvious. He will gain by having his children's past due child support obligations paid in addition to providing his children with the support that they so desperately need. Further, his argument that the lien unduly hampers his ability to pursue his claim must fail. Other jurisdictions have recognized that potential frustration of settlement negotiations is not alone sufficient to sustain an order denying a lien claim, under statute, on a pending cause of action. *Atiya v. DiBartolo,* 63 Cal.App.3d 121, 133 Cal.Rptr. 611 (1976).

For the foregoing reasons, the order of the trial court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.